153 Cal.App.3d 1098 (1984)
200 Cal. Rptr. 789
In re CHERYL H., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent,
v.
DENNIS H., Defendant and Appellant.
Docket No. 69311.
Court of Appeals of California, Second District, Division Seven.
March 30, 1984.
*1107 COUNSEL
Marks & Stevenson and Ronald S. Marks for Defendant and Appellant.
John H. Larson, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Marion Douglas, Deputy County Counsel, for Plaintiff and Respondent.
*1108 OPINION
JOHNSON, J. 

INTRODUCTION
This is an appeal from an order of the juvenile court declaring Cheryl H. a dependent child of the court and ordering Cheryl to remain in her mother's custody on the condition that Cheryl have no contact with her father. The order was based on findings that Cheryl had been sexually molested by her father and that it would be detrimental to Cheryl if her father was allowed to have contact with her.
Mr. H. appeals from the order claiming a variety of erroneous evidentiary and standard of proof rulings. He also argues there was insufficient evidence to support the order. We exclude some of the evidence as inadmissible but find the remaining proof sufficient to support the trial court's findings in this case.

I. STATEMENT OF FACTS AND PROCEEDINGS BELOW
On December 31, 1981, a petition was filed by the Department of Public Social Services (DPSS) in the Juvenile Court of the Los Angeles County Superior Court seeking to subject Cheryl H. to the jurisdiction of the juvenile court under the provisions of Welfare and Institutions Code (W&IC) section 300, subdivisions (a) and (d).
W&IC section 300 allows the juvenile court to adjudge a minor to be a dependent child of the court if the minor has no parent capable of exercising proper care or control over her (subd. (a)), or if the home is unfit due to "neglect, cruelty, depravity, or physical abuse" of the child by a parent or guardian. (Subd. (d).)
At the time the petition was filed, Cheryl was three years old. Her parents, Mr. and Mrs. H., had separated three years earlier after a six-month marriage.
Count 1 of the petition alleged between December 11 and December 13, 1981, Mr. H. sexually molested Cheryl.
Count 2 of the petition alleged on December 22, 1981, Cheryl was suffering from three hymenal tears in her vagina, as well as other injuries.
On January 4, 1982, Mr. H. denied the allegations of the complaint except that he stipulated to the allegation in count 2 that Cheryl had been injured. *1109 Thus, none of the parties denied that Cheryl had suffered the injuries alleged.[1]
On January 7, 1982, the court appointed Dr. Gloria Powell to conduct a psychiatric evaluation of Cheryl and both parents.[2]
On February 16, 1982, a dependency hearing was held at which Cheryl, Mrs. H., Mr. H. and DPSS were each represented by counsel.[3]
At the dependency hearing only three witnesses testified. Dr. Powell, the psychiatrist appointed by the court, testified on behalf of Mrs. H.[4] Dr. Kerry English testified on behalf of Mr. H. Mr. H. also testified on his own behalf. Cheryl, the three-year-old subject of the hearing, did not testify.
The basis of Dr. Powell's testimony was interviews she conducted with Mr. and Mrs. H. as well as six therapy sessions with Cheryl, including one 2 1/2-hour session conducted at Cheryl's home.[5] She also gave Mr. H. two standardized psychological tests: the Minnesota Multiphasic Personality Inventory and the Tennessee Self-Concept Scale.
Dr. Powell testified the results of Mr. H.'s psychological tests were that he has a passive dependent personality with highly guarded and defensive tendencies. She also said 85 percent of the 200 fathers found by the UCLA family support program for sexually abused children to have sexually abused their children had similar personality traits.
Dr. Powell's sessions with Cheryl consisted of play therapy, a technique involving toys and dolls commonly used with very young children. At some of these sessions Dr. Powell employed anatomical dolls.
Dr. Powell testified some of the conduct exhibited by Cheryl at the therapy sessions was, in her opinion and in the opinion of other recognized *1110 authorities, typical of conduct exhibited by other young children who had been sexually abused. Conduct which falls into this category consisted of: (1) Cheryl put the male doll on top of the female doll; (2) Cheryl kept the female doll close to her and pushed the male doll away; (3) Cheryl placed the penis of the male doll in her mouth and, "glassy-eyed, staring ahead compulsively" sucked on it; (4) when the subject of possible molestation was broached Cheryl sometimes clung to her mother or hid her face or went into a disassociated state; and (5) when her father was mentioned Cheryl recoiled.
Dr. Powell also testified sexually abused children often invent new names for genitalia and that Cheryl told her on several occasions "daddy hurt my poopoo" or "daddy put his poopoo in my mouth." Later Cheryl identified "poopoo" or "booboo" as words describing genitalia.
Dr. Powell also testified that based on her knowledge of the development of cognition in children Cheryl could not have been coached to respond the way she did during play therapy. She explained that this is because a three-year-old is between the sensory-motor and preoperational stages of cognition, during which time a child knows nothing about the world except what she has experienced. Also the child has not developed the deductive reasoning necessary to fabricate an event.
Dr. Powell concluded, based on the interviews and psychological tests, that in her opinion Mr. H. had sexually molested Cheryl. She also recommended against any visitation between Cheryl and her father until Mr. H.'s rehabilitation was demonstrated.[6]
Dr. English, a child abuse expert, next testified on behalf of Mr. H. He could not estimate the exact time Cheryl suffered her injuries but said she could have suffered them on December 11, 1981, or December 13, 1981, the days Cheryl visited her father. Dr. English also testified that in his opinion Cheryl could not have been injured during regular physical activity. Rather, according to the doctor, the injuries were the result of "nonaccidental trauma."
Mr. H. testified that his ex-wife had repeatedly refused to allow him to visit with Cheryl. He admitted he visited with his daughter on December *1111 11, 1981, and December 13, 1981, but he denied having sexually abused her.
At the conclusion of the hearing, the court sustained the allegations in the petition. The court, commenting on the evidence, stated that Dr. English's opinion that Cheryl's injuries were not the result of an accident, taken together with Dr. Powell's testimony, "particularly [the] description of Cheryl's actions when given the anatomical dolls ... very easily meets the preponderance of evidence test requirements."
On August 6, 1982, the court declared Cheryl a dependent of the juvenile court (W&IC, § 300, subds. (a) and (d).) The court allowed Cheryl to remain in her mother's home on the conditions that Mr. H. was not allowed to visit Cheryl and that he begin therapy. Once therapy began, visitation could be resumed only in the event that DPSS, Cheryl's therapist and Mr. H.'s therapist all agreed to such visitation.
Mr. H. filed a timely notice of appeal. He argues the judgment must be reversed on three grounds: (1) the trial court erred by applying the preponderance of the evidence standard of proof; (2) the judgment was supported only on the basis of inadmissible hearsay evidence; and (3) the evidence was insufficient to support the judgment.

II. (1a) THE APPROPRIATE STANDARD OF PROOF AT A DEPENDENCY HEARING UNDER W&IC SECTION 300 DEPENDS UPON WHETHER THE TRIAL COURT IS MAKING A JURISDICTIONAL OR DISPOSITIONAL DETERMINATION.
(2a), (3) (See fn. 8.) A dependency hearing conducted under W&IC section 300[7] involves two distinct issues which must be addressed by the juvenile court.[8] (2b) First, at the "jurisdictional phase" of the hearing, the court must decide whether the minor comes within one of the categories specified in W&IC section 300. (W&IC, § 355.) If the court decides this issue in the affirmative, the court may invoke its jurisdiction to declare the *1112 minor a dependent child of the court. Second, at the "dispositional phase" of the hearing, the court must decide the appropriate disposition of the minor. (W&IC, §§ 356, 358.) The court will hear evidence to determine disposition, which may range from supervised custody (W&IC, § 362) to removal of the child from the home. (W&IC, § 361.) The court's principal concern is a disposition consistent with the best interests of the minor. (Collins v. Superior Court (1977) 74 Cal. App.3d 47, 52 [141 Cal. Rptr. 273].)
The first issue presented involves the proper standard of proof to be applied at a dependency hearing. The trial court in this case applied the standard generally applicable in civil proceedings, proof by a preponderance of the evidence.[9] Appellant citing In re Robert P. (1976) 61 Cal. App.3d 310, 318 [132 Cal. Rptr. 5], appeal dismissed sub nom. Potter v. Department of Social Servs. (1977) 431 U.S. 911 [53 L.Ed.2d 221, 97 S.Ct. 2165], claims the court should have applied a more stringent standard, proof by clear and convincing evidence.[10]

A. (1b) At the Jurisdictional Phase of a Dependency Hearing the Appropriate Standard of Proof Is Supplied by W&IC Section 355, which Requires Proof by a Preponderance of the Evidence.

The court in Robert P. did indeed conclude that clear and convincing evidence was the proper standard of proof to be applied at the jurisdictional phase of a dependency hearing. (Id. 61 Cal. App.3d at pp. 318-319.)[11] And although at least two appellate courts have followed the holding in that case, (In re Fred J. (1979) 89 Cal. App.3d 168, 174-175 [152 Cal. Rptr. 327]; In re Phillip B. (1979) 92 Cal. App.3d 796, 803 [156 Cal. Rptr. 48], cert. den. Bothman v. B. (1980) 445 U.S. 949 [63 L.Ed.2d 784, 100 S.Ct. 1597]), the majority of courts have held the preponderance standard of proof is the applicable standard at the jurisdictional phase of such a hearing. (In re Lisa D. (1978) 81 Cal. App.3d 192, 196 [146 Cal. Rptr. 178]; In re Nicole B. (1979) 93 Cal. App.3d 874, 882 [155 Cal. Rptr. 916]; In re Jeremy C. (1980) 109 Cal. App.3d 384, 394, fn. 10 [167 Cal. Rptr. 283]; In re Edward C. (1981) 126 Cal. App.3d 193, 201, fn. 4 [178 Cal. Rptr. 694]; In re Bernadette *1113 C. (1982) 127 Cal. App.3d 618, 624 [179 Cal. Rptr. 688].) Moreover, W&IC section 355 specifically provides that "proof by a preponderance of evidence ... must be adduced to support a finding that the minor is a person described by [W&IC] Section 300." Mr. H.'s contention that the state was required to prove its case by some higher degree of proof at the jurisdictional phase is accordingly without merit.

B. At the Dispositional Phase of a Dependency Hearing Proof by a Preponderance of the Evidence Is Sufficient Unless the Court Awards Custody to a Nonparent.
(4a) The question remains, however, whether the trial court applied the appropriate standard of proof at the dispositional phase of the hearing. The judge's comments from the bench indicate he applied the preponderance standard and we consider whether some higher standard of proof should have been applied.
(5) First, it is clear W&IC section 300 pertains only to the jurisdictional phase of a dependency hearing. It is equally clear that the statutory burden of proof provided by W&IC section 355 also only applies to the determination of jurisdiction. That code section thus does not answer the question of the quantum of evidence needed to sustain a particular dispositional order.
Since in our view the appropriate standard of proof depends upon the disposition ordered by the court, we examine the options available to the juvenile court at the dispositional phase of a dependency proceeding. W&IC section 361, subdivision (a) provides "the court may limit the control to be exercised over such dependent child by any parent or guardian ... [provided that the] limitations shall not exceed those necessary to protect the child." And W&IC section 362, subdivision (a) allows the court, at the dispositional phase of a dependency proceeding, to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, ..." (Italics added.) (6) These provisions thus vest the juvenile court with broad discretion in fashioning a dispositional order consistent with its duty to protect the child. But neither provision makes reference to the standard of proof required to support a particular limitation on custody.
Subdivision (b) of W&IC section 361 does require a clear and convincing quantum of proof, but only if a child is removed from the custody of her parents.[12] (4b) Here, the court ordered that Cheryl remain in her mother's *1114 home, with limitations on Mr. H.'s access to her. This does not constitute an order removing a child from the custody of a custodial parent. In re Lisa D., supra, 81 Cal. App.3d 192, 196, and the more stringent proof requirements of subdivision (b) are thus inapplicable to this case.
Civil Code section 4600 also applies to the dispositional phase of a dependency proceeding. (In re B.G. (1974) 11 Cal.3d 679, 696 [114 Cal. Rptr. 444, 523 P.2d 244].) That section requires that "[b]efore the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child." This section has been interpreted as meaning the finding of detriment to the child must be supported by clear and convincing evidence. (Id., at p. 695.) However, here custody was awarded to a parent, Cheryl's mother. Since Cheryl was not removed from her home and ordered to reside with a nonparent, the more stringent proof requirements of section 4600 have no application to this case.
(1c) The state's burden at the dispositional phase of a dependency hearing is to prove a limitation on custody is made in the best interests of the child. The standard of proof on this issue, there being no provision of law to the contrary, is by a preponderance of the evidence. (Evid. Code, § 115.) The more stringent standard of proof by clear and convincing evidence only applies if a child is removed from her home and custody is awarded to a nonparent. (W&IC, § 361, subd. (b); Civ. Code, § 4600.)
We believe this standard of proof strikes the proper balance between the interests of children in a safe home (W&IC, § 202) and the interests of parents in maintaining the parent-child relationship. It also ensures the state upholds its duty to protect children from abuses of parental authority. (W&IC, § 202, subd. (a); In re Phillip B., supra, 92 Cal. App.3d 796, 801.) Where, as here, a minor is ordered to remain in the custody of one of the parents we find no compelling policy, nor any statutory authority, to require a more stringent quantum of proof which, in effect, would make proof of neglect more difficult.[13]
*1115 In addition, our analysis finds support in the case law. In In re Bernadette C., supra, 127 Cal. App.3d 618, at page 624, in the context of the dispositional phase of a dependency hearing, the court stated: "If the disposition ordered is removal of the child from parental custody, the more stringent standard of clear and convincing evidence is required." (Citations omitted.) It follows that where removal from parental custody is not ordered, the preponderance standard is sufficient. Applying that burden of proof in this case was appropriate and we accordingly reject this claim of error.

III. SOME OF THE PSYCHIATRIC OPINION TESTIMONY WAS INADMISSIBLE BUT MOST OF THE REMAINING EVIDENCE CONSIDERED BY THE TRIAL COURT WAS ADMISSIBLE.[14]
(7) A determination that a minor is a dependent child of the court must be established by proof which is legally admissible in civil trials (W&IC, § 355).[15] Thus, at a dependency hearing, rulings on the admissibility of evidence must comply with the rules prescribed by the Evidence Code (W&IC, § 701).[16]
The evidence supporting the several findings in this case consisted entirely of Dr. Powell's expert opinion testimony, her description of the observations and out-of-court declarations on which she based those opinions, and Dr. English's opinion testimony. No one challenges the admissibility of Dr. English's conclusion that Cheryl had suffered nonaccidental sexual trauma and that this trauma could have occurred during a time frame which included a visit with her father. But the father does challenge the admissibility of Dr. Powell's opinion testimony and the information on which it is based.
We first consider which, if any, of Dr. Powell's opinions are admissible. We then turn to her testimony describing the basis for her opinions and determine which of those items are admissible either as independent evidence or as proper justification for an admissible opinion.

*1116 A. The Psychiatrist's Opinion Testimony That the Child Had Suffered Sexual Abuse Was Admissible but Her Opinion Testimony That a Specific Third Person, the Father, Had Committed This Abuse Was Inadmissible.

Dr. Powell expressed opinions as to two essential elements of the petition. First, Cheryl had been sexually abused. Second, her father was the abuser. (8a), (9a) We have no difficulty concluding the first topic was a proper subject for expert opinion testimony[17] and, furthermore, that the opinion itself was based on proper and sufficient "matter."[18] (10a) However, for reasons explored shortly, we hold Dr. Powell's conclusion about the identity of the abuser was not a proper subject for expert opinion testimony, at least by a psychiatrist. (11a) And were it a proper subject for this form of testimony, her conclusion was based in part on information which cannot be used as a basis of this opinion.

1. Opinion that Cheryl was sexually abused.
(8b) Dr. Powell is an experienced psychiatrist with demonstrated expertise in the treatment of sexually abused children. Her education, knowledge and experience have made her familiar with the behavior typical of children who have been subjected to sexual abuse. She was able to observe Cheryl's behavior during six separate play-therapy sessions. She watched the child play with male and female dolls, heard her use new slang terms for genitalia, and the rest. Because of her expertise, Dr. Powell was able to draw inferences about whether Cheryl had been sexually abused which were beyond "common experience." A nonexpert who observed the same behavior as Dr. Powell would have difficulty interpreting this data without the assistance of an expert.
Expert opinion testimony about whether a child has been sexually abused is similar to the "battered child syndrome" testimony already approved by California courts. In People v. Jackson (1971) 18 Cal. App.3d 504 [95 Cal. Rptr. 919], a pediatrician testified that a 13-month-old child was suffering from "battered child syndrome." This opinion testimony was based on the duration, severity, number and degree of physical injuries experienced by this child. The court upheld admission of this expert testimony *1117 with the following words: "[T]he "battered child syndrome" simply indicates that a child found with the type of injuries outlined above has not suffered those injuries by accidental means. This conclusion is based upon an extensive study of the subject by medical science. The additional finding that the injuries were probably occasioned by someone who is ostensibly caring for the child is simply a conclusion based upon logic and reason. Only someone regularly "caring" for a child has the continuing opportunity to inflict these types of injuries; an isolated contact with a vicious stranger would not result in this pattern of successive injuries stretching through several months....
"An expert medical witness may give his opinion as to the means used to inflict a particular injury, based on his deduction from the appearance of the injury itself.... A medical diagnosis based on probability  as is the case with the `battered child syndrome' diagnosis  is admissible; the lack of scientific certainty does not deprive the medical opinion of its evidentiary value." (Id. at p. 507; see also Annot. 98 A.L.R.3d 306 (1980); citations omitted.)[19]
Child beating and sexual molestation of a child differ primarily in the location and cause of the injuries. If expert opinion testimony is admissible to establish that the facial and bodily injuries exhibited by a child are the result of an ongoing pattern of child beating, then that same sort of testimony should be available to assist a trier of fact who is attempting to determine whether certain vaginal injuries were caused by sexual abuse rather than some innocent accident.
Here, of course, it is not medical testimony about the physical characteristics of the injury which supports the diagnosis. Rather it is psychiatric testimony about the victim's postinjury behavior which leads to the conclusion she was sexually abused. But that behavior appears to be unique to children subjected to child abuse and as valid an indicator of such abuse as the physical characteristics used to diagnose "battered child syndrome."
(9b) We likewise find the data used by Dr. Powell to derive her opinion Cheryl had been sexually abused was proper matter on which to base such opinion. The child played with male and female dolls in a way only children who have been sexually abused ordinarily do. She also used words and demonstrated anxiety symptoms characteristic of those who have been sexually abused. Indeed most of this data is independently admissible as non-hearsay.[20] *1118 Even the statement "her father had hurt her poopoo" was nonhearsay for the purpose of deriving this opinion. That is, it was not being used for the truth of the matter stated  the father hurt her poopoo  but rather to show the language she used in referring to male and female genitalia. (Cf. People v. Young (1964) 224 Cal. App.2d 420, 424 [36 Cal. Rptr. 672] [tape recording of out-of-court declaration admissible to show declarant's manner of speech on issue of whether he was intoxicated].) This information was both a proper and sufficient basis for Dr. Powell's opinion Cheryl had been sexually abused.

2. Opinion that Mr. H. was the one who sexually abused Cheryl.
(12) A psychiatrist is an expert in the functioning of the human mind. Accordingly, the law has freely allowed psychiatrists to venture opinions in court about various aspects of the mental condition of people they have examined. These admissible opinions range from the testamentary capacity of a decedent[21] to the criminal responsibility of a murderer.[22]
(10b) Dr. Powell's opinion that Cheryl's father was the abuser extends the subject matter of a psychiatrist's expert opinion far beyond anything that has yet been approved by California courts. It assumes peering into the mind of one person allows a psychiatrist not only to draw valid conclusions about the mental state and behavior of that person but to draw equally valid conclusions about the conduct of another person.
(13) It should be remembered that to be a proper subject for expert opinion it is not enough an inference be "beyond common experience." The expert opinion must "assist" the trier of fact. That is, the inference must be one which an expert of a certain type is herself entitled to make as a matter of logic, expertise and law. Where an expert in a given field is not better equipped than a lay person to make that particular inference or if neither an expert nor a lay person is allowed to make that inference then the trier of fact is not "assisted" by hearing the expert's opinion and such testimony is inadmissible. (Cf. Spencer v. G.A. McDonald Const. Co. (1976) 63 Cal. App.3d 836, 859-860 [134 Cal. Rptr. 78] [expert not allowed to give opinion about violation of safety orders since these violations cannot be considered].)
The law recognizes psychiatrists to be experts in drawing inferences about mental capacities and conditions. Thus they are allowed to give expert opinion *1119 testimony about what is happening within a patient's mind. But that does not necessarily make them experts in drawing inferences about other topics such as the conduct of nonpatients.
In making their analyses of a patient's mental condition, psychiatrists frequently rely on hearsay. These statements may be made by the patient (People v. Jones (1954) 42 Cal.2d 219, 225-226 [266 P.2d 38]; Dieden & Gasparich, Psychiatric Evidence And Full Disclosure In The Criminal Trial (1964) 52 Cal.L.Rev. 543) or third parties (Board of Education v. Haas (1978) 82 Cal. App.3d 278, 282-283 [147 Cal. Rptr. 88]; cf. Board of Trustees v. Porini (1968) 263 Cal. App.2d 784 [70 Cal. Rptr. 73]; Witkin, Cal. Evidence, supra, §§ 409, 410) and relate incidents that have happened as well as the patient's feelings, thoughts and conversations. (14) The law freely allows opinions based in part on these hearsay statements so long as the opinions are confined to one aspect or another of a patient's internal mental state. But that does not mean psychiatrists are allowed to use those same hearsay statements as the basis for opinions about other matters such as the conduct of third parties. Nor does that mean they ordinarily are allowed to express an opinion that one of the underlying hearsay statements is true and thereby convert inadmissible hearsay into admissible opinion.
(10c) The most that can be said is that Dr. Powell had enough information, much of it hearsay, to express an opinion as an expert in psychiatry that her patient, Cheryl, had a belief Mr. H. was the one who abused her sexually. (15) However, the law does not allow evidence about the beliefs of hearsay declarants to be used to infer the conduct of third persons. (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 1.2, p. 39.) California's state of mind exception specifically excludes out-of-court declarations about belief or memory even as evidence of the declarant's own conduct. It also excludes other statements about the declarant's state of mind, i.e., intent, motive, etc. as evidence of a third person's conduct.[23] Thus a declarant's out-of-court statement, "I am going to the store with Jim," would be admissible to show that the declarant went to the store. It would not be admissible as evidence that Jim went to the store. Moreover, a declarant's out-of-court statement "I remember going to the store with Jim" or "I believe I went to the store with Jim" would not be admissible to show either the declarant or Jim went to the store.
*1120 (10d) Here, based primarily on declarant's out-of-court declarations about what she remembered and believed,[24] the psychiatrist seeks to draw inferences about conduct, not conduct of the declarant but of a third person. If this opinion testimony were allowed it would effectively swallow the hearsay rule whenever a psychiatrist or other expert could be put in the position of interviewing a hearsay declarant.
This limitation on the scope of expert opinion testimony is illustrated by the holding in Johnson v. Aetna Life Ins. Co. (1963) 221 Cal. App.2d 247, 252 [34 Cal. Rptr. 484]. The patient in that case had told a doctor the cause of his seriously injured foot was a "slip and fall" much as Cheryl told Dr. Powell Mr. H. was the one who sexually abused her. This slip and fall statement was included in the hospital records but the trial court refused to admit that part of the records. The Court of Appeal upheld this ruling: "Statements made by a patient to his surgeon respecting the cause of an injury, when declared by the latter to be necessary to enable him to form an opinion as to the nature of the injury, and constituting in part the basis for his conclusion respecting such, are admissible to show the basis for the surgeon's conclusion in the premises, but not for the purpose of establishing the truth of the facts contained therein. (Willoughby v. Zylstra (1935) 5 Cal. App.2d 297, 300 [42 P.2d 685].)
"The statements in the case at bar were irrelevant to the issue at hand; would not have been admissible if offered as a part of the testimony of the attending physician (People v. Shattuck [1895] 109 Cal. 673, 678 ...; Willoughby v. Zylstra, supra,...; were not made admissible merely by their inclusion in the hospital records (Behr v. County of Santa Cruz [1959] 172 Cal. App.2d 697, 705 ...; Shehtanian v. Kenny [1958] 156 Cal. App.2d 576, 581 ...; McGowan v. City of Los Angeles [1950] 100 Cal. App.2d 386, 392 ...; and properly were excluded." (Johnson v. Aetna Life Ins. Co., supra, 221 Cal. App.2d 247, 252. Italics supplied.)
Since the patient's out-of-court statement that his injury was caused by a slip and fall is inadmissible as evidence he actually slipped and fell, a fortiori, the physician would not be allowed to offer an opinion based on that same hearsay statement to the effect that the patient slipped and fell. He can accept the statement's truth and use it as part of the raw material for reaching an opinion about an entirely different issue, in this case his diagnosis of the nature of the patient's injuries. But he should not be permitted to render an opinion asserting the truth of the matter stated in the hearsay statement any more than that statement itself can be used to establish "the truth of the facts contained therein."
*1121 Applying the Johnson holding to the facts of the instant case, it is apparent Dr. Powell's opinion about who caused Cheryl's sexual injuries is not admissible. Cheryl's statement that her father sexually abused her, even if necessary to the psychiatrist's opinion about the nature of her injuries, that is, that they were the result of sexual abuse by someone, could only be introduced for the limited purpose of supporting that opinion. The statement could not be used to establish who caused the injury nor to support an opinion that a certain individual was responsible.
In a situation closer to sexual abuse of children, the Court of Appeal implied it is proper for medical experts to offer opinion testimony about the nature of the abuse a child suffered but not who was responsible. This was the decision authorizing expert testimony about the "battered child syndrome." (People v. Jackson, supra, 18 Cal. App.3d at p. 508.) From the facts recounted in the Jackson opinion, it is impossible to determine exactly what the pediatrician did say on the witness stand. But the court went to great pains to highlight the expert did not express an opinion about who had battered the victim. "A finding, as in this case, of the `battered child syndrome', is not an opinion by the doctor as to whether any particular person has done anything.... [¶] Contrary to the appellant's contention, there is nothing in the doctor's testimony which indicated a belief on the part of the doctor that the defendant was guilty of the offense." (Id. at p. 507.) The implicit assumption underlying this language is that had the pediatrician actually expressed an opinion to the effect the defendant battered the child this opinion would have been improper and inadmissible.
Here the expert, Dr. Powell, did what the expert in Jackson did not do. She expressed an opinion that a certain individual committed these acts of sexual abuse. This is far different from the type of opinion testimony approved in Jackson. True, in that case the court allowed the doctor to testify the child battering probably was done by someone regularly caring for the child. But this testimony merely identified the class of persons who would have been in the best position to cause the injuries. It did not purport to pin responsibility on a specific individual. Moreover, this was an opinion based on "logic and reason" not inadmissible hearsay.
People v. Phillips (1981) 122 Cal. App.3d 69, 82-87 [175 Cal. Rptr. 703], approved expert testimony suggesting a possible motive for a mother's poisoning of her infant. But this again is far different from allowing an expert to infer the identity of a perpetrator from hearsay statements made by an out-of-court declarant. Indeed in Phillips the psychiatrist-witness was asked to assume the defendant's conduct  that she had repeatedly administered the cathartic agent which eventually killed her adopted child and that the defendant had displayed certain behavior at the hospital each time the child *1122 was being treated. The psychiatrist then expressed an opinion the defendant in that case was exhibiting the symptoms of "Munchausen syndrome by proxy." The Court of Appeal deemed this to be opinion testimony about the defendant's state of mind (id. at pp. 83-84), as opposed to her conduct, and ruled it admissible on the issue of motive. (Id. at p. 84.) Thus, once again, the psychiatrist was drawing inferences within the scope of his expertise, the mental state of a given individual, the defendant in that case. In contrast to the instant case, he was not venturing an opinion about the conduct of one individual based on the mental state of another individual.
There is another sense in which this is not a proper subject for expert opinion testimony. Assuming Cheryl had testified at the trial to the effect that her father had molested her, it certainly would have been within common experience for the judge to draw the inference that the father indeed had done so. The court would not have been "assisted" enough in making that inference to warrant the admission of Dr. Powell's opinion testimony on that issue. Thus the real function of Dr. Powell's opinion testimony is to convert Cheryl's inadmissible out-of-court hearsay declaration into an admissible opinion. Or to put it another way, the inference which the expert opinion was assisting the court to make was that Cheryl's out-of-court declaration was reliable.
(16) The law allows opinion testimony about the credibility of hearsay declarants whose out-of-court statements have been admitted under some specific exception to the hearsay rule. (Evid. Code, § 780, subd. (e), § 1100; cf. People v. Thompson (1979) 98 Cal. App.3d 467, 474 [159 Cal. Rptr. 615]; Note, Impeaching And Rehabilitating A Witness With Character Evidence: Reputation, Opinion, Specific Acts and Prior Convictions (1976) 9 U.C. Davis L.Rev. 319.) However, this does not mean an expert's opinion a given declarant is believable creates a new hearsay exception by providing an independent ground for initially admitting that declarant's out-of-court statement.
(10e) Dr. Powell's opinion that Cheryl's out-of-court declaration was trustworthy is based primarily on her own conclusion someone of Cheryl's age is not capable of concocting a story that some specific individual had sexually abused her. In essence, it is an expert opinion Cheryl had to be telling the truth because she lacked the capacity to lie, at least about this subject matter.
It is not altogether clear from the record Dr. Powell meant a child like Cheryl was incapable of imagining an incident like sexual abuse or whether having actually experienced molestation it is impossible for the child to lie about the identity of the molester. But assuming she testified to a scientific *1123 opinion that children of two or three years are incapable of telling anything but the truth about sexual abuse and who abused them, this is an opinion better expressed to a Legislature. This sort of submission, properly documented, would provide persuasive support for a statute creating a new hearsay exception for out-of-court statements by victims of child abuse. But it does not provide a sound reason for accepting the child's statement as evidence at a trial being conducted under the present rules of evidence in California.
Testimony of this nature indeed may have played a role in persuading the Washington Legislature to enact a special hearsay exception for very young children who are alleged victims of sexual abuse.[25] But this court is reluctant to take upon itself to create such an exception[26] or to allow the substantial equivalent  admission of this declaration through a psychiatrist's opinion which adopts the declaration as true.
(11b) Dr. Powell's opinion also rested to a lesser extent on the results of a standardized psychological test administered to Mr. H. He tested very high on the passive-dependency scale and exhibited highly guarded and defensive tendencies. According to Dr. Powell, studies indicate a high proportion  85 percent  of fathers committing sexual abuse against their children have these personality traits. This intermediate finding, in turn, was used as part of the raw material for Dr. Powell's expert opinion on the ultimate issue of who sexually abused Cheryl.
This latter inference, in particular, requires no expertise in psychiatry or sexual abuse of children. It is strictly a matter of logic. But where does the logic carry us? It leads us to the conclusion Mr. H. had a character trait, a propensity to sexually abuse children, and acted in conformance with that propensity in this instance by sexually abusing his daughter. This inference *1124 is prohibited by section 1101 of the Evidence Code which bans character evidence in civil cases.[27]
It makes no difference that it is an expert's opinion rather than lay testimony about specific acts which is being used to establish the existence of this propensity. Nor does it matter how we dress up the inference with scientific terminology or statistical data. Its fundamental nature remains the same. Here a psychological study was used to demonstrate that certain character traits are linked with certain behavior, that is, that someone with these traits (a passive-dependent personality) has a propensity or disposition to engage in that behavior (sexual abuse of their children).[28] Then a psychological test was used to prove Mr. H. exhibited those traits. These studies and tests and the opinions based on them are relevant only if employed "as a basis for an inference that [Mr. H.] behaved in conformity with that [propensity or disposition] on a particular occasion." (Law Revision Com. comment, Evid. Code, § 1101.) Hence this is merely an exotic variety of character evidence and is inadmissible in a civil action.[29]
*1125 With respect to the issue whether Mr. H. sexually abused his daughter, Dr. Powell should not have been allowed to testify Mr. H. possessed personality characteristics in any way suggesting a propensity toward sexual abuse. Nor should she have been permitted to venture the further opinion that since he possessed this propensity he behaved that way in this instance. Here both the intermediate inference and the final inference are prohibited by the rules of evidence. That is, both the opinion Mr. H. possessed this character trait and the opinion he acted consistent with that trait are inadmissible in a civil action. Consequently, neither can be used to support the trial court's finding that Mr. H. sexually abused his daughter in this case.[30]
We are sympathetic to the difficulties of proving sexual abuse against very small children. But this problem should be addressed squarely through consideration of an amendment to the hearsay rule not through the back door of expert opinion testimony.
We realize there is some small leeway in the California Evidence Code for the courts to create new hearsay exceptions.[31] In view of our ultimate conclusion there was sufficient evidence to sustain the trial court's finding without considering Dr. Powell's opinion testimony or Cheryl's underlying hearsay accusation, this case can be resolved under the existing rules of evidence and without contemplating creation of a new hearsay exception. In any event, this would not be a very suitable case in which to consider the possibility of defining a new "residual exception" to the hearsay rule.[32] *1126 In part because no objection was lodged at the hearing, the trial court and the parties had no occasion to develop the sort of detailed foundational testimony  the special badges of reliability  which the Wisconsin Supreme Court, for instance, found so important in articulating a "residual exception" for certain hearsay statements by child victims of sexual abuse. Thus, we defer to another day and a more thoroughly developed set of facts consideration of whether California courts should create a new exception for some hearsay statements by young sex victims.

B. Most of the Conduct and Statements on Which Dr. Powell's Opinions Were Based Are Independently Admissible for One Purpose or Another.
Dr. Powell's other testimony falls into two categories. First, Dr. Powell testified to conduct exhibited by Cheryl during play therapy which she characterized as typical of conduct exhibited by other victims of child molestation. And second, Dr. Powell testified concerning words spoken by Cheryl which in effect identified Mr. H. as the person who had molested her.
(17) An expert can observe conduct and hear statements that are admissible independent of whether they are used as the basis of the expert's opinion and irrespective of whether the opinion itself is ultimately ruled inadmissible. Thus we appraise the admissibility of this testimony as if it were offered in court by a lay witness.

1. Cheryl's conduct during play therapy was nonassertive and therefore not hearsay.
(18a) We begin by analysing the admissibility of testimony about Cheryl's conduct during play therapy. Evidence Code section 1200 defines hearsay and makes it inadmissible. Hearsay, as defined by this section, "is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."
(19a) Evidence Code section 225 makes it clear a hearsay declarant's nonverbal conduct may qualify as a "statement" for purposes of exclusion *1127 under the hearsay rule, but only if the conduct was intended by the hearsay declarant "as a substitute for oral or written verbal expression." (See also 1 Jefferson, Cal. Evidence Benchbook, supra, § 1.7, p. 83; Sen. Committee on Judiciary Comment to Evid. Code § 1200.)
(18b) The issue here thus turns on whether Cheryl's conduct during play therapy was intended by her as a substitute for verbal expression. If so, it cannot be considered as evidence to support the judgment. (19b) On the other hand if her conduct was not assertive, it is not hearsay and may be used as evidence in support of the judgment. (People v. Clark (1970) 6 Cal. App.3d 658, 668 [86 Cal. Rptr. 106]; for a discussion of the difference between assertive and nonassertive conduct see, Ball, Conduct As Hearsay (1966) 41 L.A. Bar Bull. 558, passim.) The admissibility of such nonassertive conduct is governed by the general rules of relevance. (Evid. Code, §§ 350-352.)
(18c) In our view Cheryl's conduct with the anatomical dolls during play therapy was nonassertive conduct and therefore not hearsay. The record indicates Cheryl's actions with the anatomical dolls were sometimes observed while she was playing alone and sometimes observed after Dr. Powell asked her a direct question. We wonder how Mr. H. can contend Cheryl meant this conduct as a substitute for words during those times when Cheryl was playing alone and Dr. Powell merely observed the conduct. To whom was Cheryl trying to convey a message? A child playing with dolls and posing them in sexual positions is not trying to substitute her conduct for words to the effect that she has been molested. This conclusion is especially applicable when the child is playing by herself.
The question remains, however, whether evidence concerning Cheryl's play with the anatomical dolls was relevant to prove facts at issue in the case. We believe it was relevant. When a three-year-old puts a male doll on top of a female doll or orally copulates a male doll, it can be inferred that the child has been exposed to inappropriate sexual contact. Cheryl's acts of holding the female doll close to her and rejecting the male doll and of reverting to a disassociated state when the subject of molestation was broached, permit a similar inference. These inferences are based on the fact that in the absence of molestation a three-year-old is unlikely to have either an awareness of this type of sexual activity or a rejecting attitude toward men. This circumstantial evidence was thus relevant to prove the allegation in the petition that Cheryl was molested as well as supplying part of the basis for Dr. Powell's opinion to the same effect.
Dr. Powell also testified she observed Cheryl recoil at the mention of her father. The act of recoiling like the play with anatomical dolls constitutes *1128 nonassertive conduct. Admittedly, an adult might deliberately recoil as a gesture substituting for speech and intended to convey a specific message. In that instance, the act of recoiling would be a hearsay statement. (Witkin, Cal. Evidence, supra, § 460.) But in the circumstances of this case, it is apparent Cheryl recoiled involuntarily at the mere mention of her father's name. She was not intending to communicate anything. Instead it is Dr. Powell and the court who are inferring from this involuntary gesture that Cheryl fears her father and has some reason for that fear. She did not intend her recoiling "as a substitute for oral or written verbal expression." Accordingly it is not a "statement" within the meaning of Evidence Code section 225 and cannot be a "hearsay statement" within the meaning of section 1200. As a result, Cheryl's act of recoiling was admissible as some evidence it was Mr. H. who molested her. Moreover, the act of recoiling at the mere mention of her father is circumstantial proof that Cheryl is afraid of him.

2. Cheryl's out-of-court declarations that her father had molested her were inadmissible hearsay on the issue of whether the father actually committed these acts but these declarations were admissible nonhearsay on the issue of Cheryl's state of mind and the desirability of permitting the father continued access to the child.
(20) Cheryl's verbal statements to Dr. Powell identifying Mr. H. as the one who abused her clearly were hearsay if offered to prove that Mr. H. was the one who molested Cheryl. These were "statements" uttered outside the courtroom through which Cheryl intended to communicate the information it was her father who had hurt her. Under the hearsay rule, such statements cannot be used to prove the truth of what Cheryl said. (Evid. Code, § 1200; People v. Ireland (1969) 70 Cal.2d 522, 529 [75 Cal. Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]; People v. Sundlee (1977) 70 Cal. App.3d 477, 482-484 [138 Cal. Rptr. 834].) That is, they cannot be used as evidence that Cheryl's father actually abused her.
(21a) Cheryl's oral statements to Dr. Powell also do not fall under any existing exception to the hearsay rule. Admittedly under very different circumstances, California courts have admitted a child's out-of-court accusation he or she had been sexually abused. Sometimes these hearsay statements are allowed into evidence as "fresh complaints." On other occasions, they are justified under the "spontaneous exclamation" exception to the hearsay rule. But neither of these exceptions apply to Cheryl's statements to Dr. Powell in this case.
(22a) No statutory authority exists for admission of "fresh complaints" by sex victims. Nonetheless, the California courts have long allowed them *1129 into evidence often under the theory they are not being introduced for the truth of the matter stated in the complaint but merely that the complaint indeed was made. (People v. Butler (1967) 249 Cal. App.2d 799, 805 [57 Cal. Rptr. 798]; People v. Hubbell (1942) 54 Cal. App.2d 49, 56 [128 P.2d 579].) Among other things, the fact a complaint was lodged tends to support the credibility of the victim's in court testimony. (People v. Burton (1961) 55 Cal.2d 328, 351 [11 Cal. Rptr. 65, 359 P.2d 433]; People v. Nankervis (1960) 183 Cal. App.2d 744, 747 [7 Cal. Rptr. 263]; People v. Wade (1960) 181 Cal. App.2d 314, 316 [5 Cal. Rptr. 63].)
(23) But to be admissible on this ground, the complaint must have been volunteered a short time after the sexual assault. (People v. Hubbell, supra, 54 Cal. App.2d 49, 56; People v. Orduno (1978) 80 Cal. App.3d 738, 745-746 [145 Cal. Rptr. 806], cert. den. Orduno v. California (1979) 439 U.S. 1074 [59 L.Ed.2d 41, 99 S.Ct. 849]; People v. Figueroa (1901) 134 Cal. 159, 162 [66 P. 202].) That is, it must truly be "fresh" and it must truly be in the nature of a "complaint" and not a response to questions. Thus, in People v. O'Donnell (1938) 11 Cal.2d 666, 670 [81 P.2d 939], disapproved on other grounds in People v. Friend (1958) 50 Cal.2d 570 [327 P.2d 97], the California Supreme Court held inadmissible a mother's testimony about her three-year-old's out-of-court statement telling her the defendant had molested and raped the child. The child's statement was made about a half hour after the assault but in response to the mother's questions about what had happened. The Supreme Court held this was not a complaint tied into the res gestae "but a declaration of a past event." (Ibid.) Similarly, a Court of Appeal excluded a mother's testimony about her six-year-old child's statement that the defendant had molested her even though the statement was made shortly after the assault. In this instance the child offered this statement only after being spanked and the court held "the original statement made to the mother was one not in the nature of a complaint...." (People v. Ewing (1925) 71 Cal. App. 138, 143 [234 P. 917].)
(21b) Here Cheryl's out-of-court declarations were made to Dr. Powell one to two months after the incidents of sexual abuse. And she made the statements while she was being questioned at length by Dr. Powell. These "complaints" were neither fresh nor volunteered and thus are inadmissible under the "fresh complaints" theory.
Even were Cheryl's statements to Dr. Powell somehow construed as "fresh complaints" they could not be used to prove the truth of the facts stated  that Mr. H. sexually abused Cheryl. (22b) Indeed, the primary rationale of California's "fresh complaint" doctrine is that these statements are not being admitted to prove the truth of the matter stated but merely to rebut any inferences that might be drawn from the failure to complain. *1130 (People v. Burton (1961) 55 Cal.2d 328, 351 [11 Cal. Rptr. 65, 359 P.2d 433]; People v. Panky (1978) 82 Cal. App.3d 772, 778-779 [147 Cal. Rptr. 341].)[33] (21c) Accordingly, they could not be relied upon by the trial court in this case as affirmative evidence Mr. H. in fact abused his daughter.[34]
The "spontaneous exclamation" (or "excited utterance") hearsay exception likewise is inapplicable to Cheryl's statements to Dr. Powell. (24) Evidence Code section 1240 requires such statements to be made while the declarant is still "under the stress of excitement caused by" the exciting event, in this case the acts of sexual abuse.[35] This requirement has been construed to introduce a very tight time limitation on out-of-court declarations which parties seek to qualify as "spontaneous exclamations." Frequently, statements are ruled inadmissible under this exception even though uttered only a few minutes after the exciting event. (People v. Fain (1959) 174 Cal. App.2d 856 [345 P.2d 305] [statement inadmissible even though made within five minutes of accident]; Dolberg v. Pac. Elec. Ry. Co. (1954) 126 Cal. App.2d 487 [272 P.2d 527] [statement inadmissible though made 10-15 minutes after accident].) Substantially longer delays have been tolerated when the declarant was unconscious. (People v. Washington (1969) 71 Cal.2d 1170 [81 Cal. Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541] [declarant unconscious for over an hour then makes statement, held admissible].) (21d) Nonetheless, nothing in the cases or underlying theory of the "spontaneous exclamation" exception would suggest the necessary level of psychological stress could be sustained for even a few hours to say nothing of the weeks and months involved in this case.[36]
*1131 (25a) Cheryl's statements to the effect that Mr. H. molested her, although not admissible to prove he actually did, are admissible as circumstantial evidence Cheryl believed he did.[37] "The hearsay rule excludes evidence of a declarant's statement only when it is offered to prove the truth of the matter stated in such statement. If a declarant's statement is offered for some purpose other than to prove the truth of the facts stated it is not a hearsay statement. Its admissibility depends upon principles of relevancy.... Since the declarant's statement is not offered to prove the truth of the facts stated in the statement, neither the declarant's veracity nor the accuracy of his perception or recollection of the facts perceived is involved. The question for the trier of fact is whether declarant made the statement  not whether the statement is true or false. The credibility of the witness who testifies that he heard declarant make the statement is the significant element for the trier of fact to consider." (Evid. Code, § 1200; 1 Jefferson, Cal. Evidence Benchbook, supra, § 1.1, pp. 6-7.)
Here Cheryl's statements Mr. H. had molested her supply circumstantial evidence she had a certain state of mind, that is, a belief her father had hurt her and a dislike and fear of him based on that belief. Whether the statement is true or not is irrelevant to this use of the statement. Thus it is nonhearsay for this purpose. (26) It is well settled that out-of-court declarations can be used as circumstantial evidence of the declarant's own state of mind. (Witkin, Cal. Evidence (2d ed. 1966) §§ 466-467.) This includes a declaration someone harmed her offered as circumstantial evidence of the declarant's negative attitude toward the one she believes committed this wrong against her. (Robinson v. McKnight (1930) 103 Cal. App. 718, 723-725 [284 P. 1056].)
To be admissible for this purpose, of course, the declarant's state of mind indeed must be at issue in the case. (25b) Cheryl's state of mind with regard to her father is certainly relevant to the issues presented in a dependency *1132 hearing. The purpose of a dependency hearing is to determine the best interests of the child and to protect those interests. (W&IC, § 361; Civ. Code, § 4600; Collins v. Superior Court, supra, 74 Cal. App.3d 47, 52.) A child's belief that her father harmed her and her fear of him is relevant evidence tending to prove it is not in the child's best interests to permit his continued contact with her.[38]
Cheryl's state of mind, although not controlling on the issue of her best interests, is nevertheless relevant to that issue. These statements were thus properly admitted for the sole purpose of proving Cheryl's state of mind.

IV. THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE JURISDICTIONAL DETERMINATION THAT THE ALLEGATIONS IN THE COMPLAINT WERE TRUE AND THE DISPOSITIONAL DETERMINATION THAT IT WAS NOT IN CHERYL'S BEST INTEREST TO HAVE CONTACT WITH HER FATHER.
Mr. H.'s final contention is that there was insufficient evidence to support the judgment. (27) It is well settled that our review on this issue is limited to whether the judgment is supported by substantial evidence. Issues of fact and credibility are questions for the trial court, not this court. (In re Carmaleta B. (1978) 21 Cal.3d 482, 494-495 [146 Cal. Rptr. 623, 579 P.2d 514].) "The rule is clear that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." (In re Phillip B., supra, 92 Cal. App.3d 796, 802.)
We have ruled inadmissible some of the evidence which the trial judge may have used in reaching a decision in this case. But this will frequently happen when no objections are lodged against potentially inadmissible proof during the course of the proceedings. The trial court will not have the opportunity to sort out the admissible from the inadmissible and may indeed take into consideration some items of evidence which it would have excluded if the evidentiary issues had been raised and argued in a timely fashion. (28) However, under Welfare & Institutions Code, section 355 and 701, our role as a reviewing court is not to reverse judgments where they may have been based in part on excludable evidence. Rather our duty is to strip *1133 away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding.
With these principles in mind, we first examine whether there was substantial evidence to support the trial court's jurisdictional finding of dependency. And then we examine whether there was substantial evidence to support the dispositional finding that continued contact with her father would be detrimental to Cheryl.
(29) The court found true the allegation in the petition that Mr. H. sexually molested Cheryl and accordingly invoked its dependency jurisdiction. This finding was supported by the following evidence: (1) Cheryl exhibited conduct during play therapy which indicated she had been exposed to inappropriate sexual contact with a male; (2) Cheryl's conduct during therapy sessions, in the opinion of experts, was consistent with the conduct of other victims of child molestation; (3) Cheryl was suffering from injuries in her vaginal area; (4) Dr. English's opinion that Cheryl's injuries could not have occurred accidentally; (5) Dr. English's opinion that the injuries could have been sustained on the days Mr. H. admitted he was with his daughter; (6) Cheryl recoiled at the mention of her father's name; and, (7) Mr. H.'s failure to introduce evidence indicating some other person sexually abused Cheryl or indeed to introduce any evidence controverting the proof which supported the conclusion he had sexually abused his daughter. Although not overwhelming, we find this evidence was substantial and thus supported the trial court's finding, based on a preponderance of the evidence, that Cheryl was molested by her father.
(30) The finding that it was in Cheryl's best interest to discontinue any visitation with her father until Mr. H. was rehabilitated was supported by the evidence just mentioned as well as: (1) Dr. Powell's recommendation; (2) Cheryl's fear of her father; and (3) Cheryl's belief that her father had molested her. We believe this evidence was also substantial and that it supported the trial court's finding, based on a preponderance of the evidence, that it would be detrimental to Cheryl to allow her father to have contact with her.
In reviewing the transcript of this hearing, we were impressed with the thoroughness and objectivity of the trial judge. He characterized this case as one of the strongest cases of this type he had heard. Although exclusion of the psychiatrist's opinion that Mr. H. was the one who sexually abused Cheryl weakens the proof somewhat, we find what remains is enough to supply the preponderance of evidence needed to support the court's findings.

*1134 DISPOSITION
The judgment is affirmed.
Schauer, P.J., and Thompson, J., concurred.
NOTES
[1] Cheryl was examined by a physician on December 26, 1981, less than two weeks after her last visit with her father. The doctor reported that Cheryl suffered the injuries alleged in count 2 of the petition.
[2] Evidence Code section 730 allows the court on its own motion to appoint an expert to issue a report and testify at trial.
[3] W&IC section 318 mandates the appointment of an attorney to represent a minor at any dependency hearing held on the basis of W&IC section 300, subdivision (d). W&IC section 318.5 provides that each parent has a right to an attorney at such a hearing and also that if they cannot afford one, counsel will be appointed.
[4] The voir dire of Dr. Powell reveals that she is a child psychiatrist with extensive experience with victims of child molestation.
[5] Dr. Powell also testified on the basis of her own extensive records of the sessions with Cheryl. These were admitted into evidence and are included in the record on appeal.
[6] In a June 15, 1982, letter which is included in the record on appeal, Dr. Powell summarized her treatment of Cheryl and recommended "that visitations with her father not be considered until she is 12 or until such time it can be shown that her father has been completely rehabilitated. It must be remembered that at one time Cheryl was in a prepsychotic state because of the molestation.... The healing process continues, and visitation with her father, at this point in time, would disrupt that process."
[7] W&IC section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, ... [¶] (d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
[8] A dependency hearing must be distinguished from a termination hearing conducted under Civil Code section 232. In the latter situation the issue is whether the parent-child relationship should be permanently and irrevocably terminated. (See Civ. Code, § 238 describing the effect of an order of termination.)
[9] Evidence Code section 115, in pertinent part, provides that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." This burden has been interpreted as meaning the existence of the contested fact is more probable than not. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 45.1, p. 1641.)
[10] Clear and convincing evidence has been interpreted as meaning that the existence of the contested fact is not merely more probable than not but highly probable. The proof must be by evidence that is "clear, explicit and unequivocal." (2 Jefferson, Cal. Evidence Benchbook, supra, § 45.1, p. 1639.)
[11] For an examination and criticism of the holding in Robert P. see Otterson, Dependency and Termination Proceedings in California  Standards of Proof (1979) 30 Hastings L.J. 1815, at pages 1821-1825.
[12] W&IC section 361 was amended to include the more stringent standard of proof requirement. Prior versions of the statute did not include any such requirement. The amendment became effective September 13, 1982.
[13] One commentator argues imposing a higher standard of proof at a dependency hearing frustrates the policy behind child protective proceedings:

"The safety and general welfare of the child is of paramount concern in child protective proceedings. Utilization of a higher quantum of proof only frustrates the court's duty to protect children from the dangers arising out of parental neglect or abuse." (White, Dependency Proceedings: What Standard of Proof? An Argument Against The Standard of "Clear and Convincing" (1977) 14 San Diego L.Rev., 1155, citations omitted.)
[14] There was no objection to this evidence during the hearing.
[15] W&IC section 355 provides as follows: "At the hearing, the court shall first consider only the question whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."
[16] W&IC section 701 provides "... The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision...."
[17] Evidence Code section 801, subdivision (a) allows an expert to testify in the form of an opinion if the opinion is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; ...."
[18] Evidence Code section 801, subdivision (b) also requires the expert opinion to be "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."
[19] The holding in People v. Jackson which allowed expert opinion testimony that certain injuries were the product of a "battered child syndrome" has been approved in several subsequent California decisions. (People v. Ewing (1977) 72 Cal. App.3d 714, 717 [140 Cal. Rptr. 299]; People v. Phillips (1981) 122 Cal. App.3d 69, 87 [175 Cal. Rptr. 703].)
[20] See pages 1126-1128, post, for a discussion of the independent admissibility of this evidence.
[21] (See, e.g., Estate of Blake (1902) 136 Cal. 306, 307 [68 P. 827]; Estate of Gore (1953) 119 Cal. App.2d 796, 799-800 [260 P.2d 859]; Witkin, Cal. Evidence (2d ed. 1966) § 415.)
[22] (See, e.g., People v. Woods (1937) 19 Cal. App.2d 556, 560-562 [65 P.2d 940]; Witkin, Cal. Evidence, supra, § 416.)
[23] Evidence Code section 1250 defines the present state of mind exception and reads in pertinent part: "(a) ... [E]vidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation ... is not made inadmissible by the hearsay rule when: [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant. [¶] (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." (Italics supplied.)
[24] At pages 1128-1131, post, we consider why Cheryl's statements to Dr. Powell that Mr. H. sexually abused her do not fall within any exception to the hearsay rule.
[25] "A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if: [¶] (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and [¶] (2) The child either: [¶] (a) Testifies at the proceedings; or [¶] (b) Is unavailable as a witness: Provided, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act. [¶] A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement." (1982 Wash. Legis. Serv. ch. 129, § 2 (West) discussed in Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases (1983) 83 Colum. L.Rev. 1745, 1763-1766.)
[26] We note some of the safeguards established in the Washington statute were not afforded in this proceeding.
[27] Evidence Code section 1101, subdivision (a) reads in pertinent part: "... [E]vidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible if offered to prove his conduct on a specified occasion." The comment to this section defines a person's character as "his propensity or disposition to engage in a certain type of conduct." It also explains that evidence about a person's propensity or disposition is inadmissible when offered in support of an "inference that he behaved in conformity with that [propensity or disposition] on a particular occasion."

See, e.g., Deevy v. Tassi (1942) 21 Cal.2d 109, 122 [130 P.2d 389]; Vance v. Richardson (1895) 110 Cal. 414, 417 [42 P. 909]; Van Horn v. Van Horn (1907) 5 Cal. App. 719, 721 [91 P. 260]; Witkin, California Evidence (2d ed. 1966) sections 324, 327.
[28] As a matter of logic, the statistical evidence offered by Dr. Powell is not even very persuasive in establishing the claimed propensity to sexual abuse. It may be true that 85 percent of sexually abusing fathers have passive-dependent personalities. But those sexually abusing fathers may represent only an infinitesimal fraction of all fathers with passive-dependent personalities. Dr. Powell did not present any evidence about the statistical frequency of child abuse among passive-dependent fathers. But if, let us say, 99.9 percent of passive-dependent fathers never sexually abuse their young children and only 1/10 of 1 percent do, this would not demonstrate much of a propensity for child abuse. Even if a full 5 percent did and "only" 95 percent did not it would be hard to describe the statistical relationship as a strong propensity.

Thus, even if character evidence were admissible in civil cases to show conduct in conformance with that character trait, Dr. Powell's evidence might be deemed too speculative to be admitted because the logical link between trait and conduct is simply too weak. Or to put it another way, the group in which Dr. Powell's testimony placed Mr. H. may well have only the slightest propensity to abuse their children. In that instance, the relevance of this evidence would be so marginal that it could be excluded as too conjectural. Or its relevance might be deemed so marginal that it would be easily overcome by the tendency to mislead the trier of fact into fallacious reasoning.
Nonetheless, since we rule this statistical evidence and Dr. Powell's related opinions are inadmissible character evidence, we need not consider these alternative grounds for excluding this same testimony.
[29] In a somewhat analogous situation, courts have rejected expert testimony that certain personality types are "accident prone" on grounds it is character evidence offered to show the subject probably acted negligently on a given occasion in conformance with his "accident proneness." (Thornburg v. Perleberg (N.D. 1968) 158 N.W.2d 188, 191.) Testimony that a plaintiff was "not accident prone" likewise has been rejected as improper character evidence. (McNabb v. Green Real Estate Co. (1975) 62 Mich. App. 500 [233 N.W.2d 811, 816-817].)
[30] Dr. Powell relied very heavily on Cheryl's out-of-court declarations and Mr. H.'s personality test in reaching her conclusion that Mr. H. abused his daughter. It is not at all clear she would have been willing and able to state her expert opinion to that same effect based solely on her observations of Cheryl's nonassertive conduct. Thus, we do not reach the issue whether the limited information available would have provided sufficient basis for an expert opinion on that issue or whether the inferences involved would have been sufficiently beyond common experience to warrant expert opinion testimony.
[31] This leeway is found in the comment of the Senate Committee on the Judiciary to section 1200 of the California Evidence Code which reads in pertinent part: "Under Section 1200, exceptions to the hearsay rule may be found either in statutes or in decisional law. Under existing law, too, the courts have recognized exceptions to the exclusionary rule in addition to those exceptions expressed in the statutes. See People v. Spriggs (1964) 60 Cal.2d 868 [36 Cal. Rptr. 841, 389 P.2d 377]."
[32] The Wisconsin courts have used a "residual hearsay exception" approach to admit reliable hearsay statements by young child abuse victims. In Bertrang v. State (1971) 50 Wis.2d 702 [184 N.W.2d 867, 870], the Supreme Court of Wisconsin approved admission of a hearsay statement a nine year old made two days after she was sexually assaulted. In doing so it expressly found the statement trustworthy because of the child's age, corroborative physical evidence, the relationship between child and victim, and the spontaneity of the statement. (Id. at pp. 869-870.) The Bertrang case, in turn, was used as an example to justify inclusion of a "residual exception" in the Wisconsin Evidence Code. That provision now admits hearsay "not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

The dangers as well as the advantages of using a "residual exception" approach to admit certain out-of-court declarations by young child abuse victims are discussed in Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, supra, 83 Colum. L.Rev. 1745, 1761-1763. This same article also considers other ways of creating an appropriate hearsay exception for young sex abuse victims.
[33] Admission of "fresh complaints" even for this limited purpose has been sharply criticized by at least one leading California commentator. He argues this rationale is illogical "because it permits the rebuttal of a defense theory before any such theory has been advanced." (1 Jefferson, Cal. Benchbook, supra, § 1.1, pp. 11-12.)
[34] The other rationale sometimes employed to justify the fresh complaints doctrine leads to the same conclusion. The Court of Appeal in People v. Orduno, supra, 80 Cal. App.3d 738, allowed a child's fresh complaint on the theory it was admitted as evidence not to prove the truth of the matter stated but only to evidence the child's state of mind. Jefferson is equally critical of the logic of this rationale since he foresees the jury will misuse the statement as proof of the matter stated after it is admitted to prove something not at issue in the case  the victim's state of mind. (1 Jefferson, Cal. Evidence, supra, § 1.1, pp. 12-13.) In any event, under this rationale a "fresh complaint" once again would be admissible solely for a purpose other than evidence of the truth of the allegations about what happened and who committed the offense. Consequently, it could not be relied upon by the trial court in this case as evidence Mr. H. actually abused his daughter.
[35] Evidence Code section 1240 reads in pertinent part: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant: and [¶] (b) was made spontaneously while the declarant was under the stress of excitement caused by such perception."
[36] One court did stretch the "spontaneous exclamation" exception to cover a complaint made to the police three weeks after a rape. (People v. Panky, supra, 82 Cal. App.3d 772, 778-779.) However, this severly criticized holding arose in unusual circumstances. To begin with, it was a second complaint, the first having been lodged shortly after the crime. With but one exception it merely repeated the information in the initial spontaneous declaration. Moreover, this second complaint was triggered when the victim saw her unknown assailant walking down the street. This sighting arguably reawakened the emotional stress and excitement of the original crime long enough to qualify the second complaint as a "spontaneous exclamation." At least one commentator does not agree with the Panky court's construction of the "spontaneous exclamation" exception. "There is no way to justify the view that, one month after being raped, [the victim] was laboring under excitement caused by the earlier rape...." (1 Jefferson, Cal. Evidence Benchbook, supra, § 1.1, p. 12.)

Even under Panky, however, Cheryl's statements to Dr. Powell could not qualify as "spontaneous exclamations." These statements were made during interview sessions months after the event and not during any emotional state generated by the acts of abuse.
[37] We already have observed that these statements also are admissible for the limited purpose of demonstrating the words Cheryl used to describe genitalia. (See pp. 1117-1118, ante.)
[38] We do not mean to suggest this evidence ordinarily would be admissible in a criminal case. In the criminal context, the state of mind of the victim is generally not relevant to the factual issues in the case and hence is not admissible.