[No. C000336. Third Dist. Aug. 28, 1987.]

In re SARA M., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY WELFARE DEPARTMENT, Plaintiff
and Respondent, v.
CHRISTINE I., Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the Reporter of Decisions is directed to publish the Facts, part I and Disposition only of this opinion.

COUNSEL

Paul H. Greisen, under appointment by the Court of Appeal, for Defendant and Appellant.

L. B. Elam, County Counsel, and Denis J. Zilaff, Deputy County Counsel, for Plaintiff and Respondent.

---

**OPINION**

ACKLEY, J.*—This appeal marks the second time appellant's case has been before this court. Appellant's daughter, Sara M., was adjudged a dependent of the court and placed in the custody of her maternal grandparents. Appellant contends the trial court prejudicially erred in allowing testimony concerning the "child molest syndrome," to prove that Sara had been molested. We agree and reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In early November 1983, appellant noticed a vaginal discharge and redness in her three-year-old daughter, Sara. Suspecting a possible molestation, appellant asked Sara who had touched her. Sara responded affirmatively to every name mentioned. Appellant told a nurse she was concerned Sara might have been molested. Appellant listed a number of people who might have molested Sara, including her husband, Danny I. (Sara's stepfather), her father-in-law, and her brother-in-law. On the nurse's suggestion, she took Sara to see a doctor. No evidence of molestation was found; a bacterial infection was diagnosed.

Later that month, Sara went to Lake Tahoe to spend the Thanksgiving holidays with her maternal grandparents, Mr. and Mrs. H. Sara told her grandmother that Danny had hurt her. Mrs. H. had noticed a vaginal cut and rectal bleeding on Sara on two occasions during the previous year and had discussed the injuries with appellant.

Mrs. H. informed appellant of Sara's statement and contacted Child Protective Services. A case worker interviewed Sara and a police investigator spoke to appellant the following day. The officer took Sara into protective custody. Dependency petitions were filed and the court sustained the petitions. In March 1985, this court reversed, finding the petitions had been sustained on insufficient evidence, i.e., only the social worker's report. (*In re Amanda I.* and *Sara M.* (Mar. 27, 1985) 3 Civ. 23918.)[1]

---

*Assigned by the Chairperson of the Judicial Council.

[1] The previous appeal involved both Sara and her stepsister Amanda. The present appeal concerns only Sara.

Petitions were refiled. The petition of January 5, 1984, alleged Sara came within the provisions of Welfare and Institutions Code, section 300, subdivision (d)[2] in that "during the year prior to December 1, 1983, said minor's stepfather, Danny I [.], did perform lewd and lascivious acts with and upon the body of said minor." A second petition, filed June 27, 1985, alleged Sara came within section 300, subdivisions (a) and (d). Count I alleged Sara was molested while in the care of her mother. Count II alleged Sara had no parent capable of exercising proper and effective parental care or control.

In the summer of 1985, a jurisdictional hearing was held. Over appellant's objections, petitioner introduced a social worker's report containing information about the alleged molestation. The report recounted Sara's version of events as told to different people on different occasions. The alleged acts included fondling, oral copulation and digital penetration of the vagina and anus. The report stated Sara had told her foster mother and a therapist that Danny had inserted a spoon into her vagina.[3]

Sara testified concerning the spoon incident and identified Danny as the perpetrator. She denied the other incidents included in the report.

Among petitioner's numerous witnesses at the jurisdictional hearing were two psychologists who testified concerning the "child molest syndrome," described in detail below. Appellant objected to this testimony. The trial court permitted the witnesses to describe the syndrome but did not allow these witnesses to testify a molestation had in fact occurred. Witnesses testified concerning Sara's behavior over this period of time. The court admitted their testimony concerning Sara's statements as evidence of symptoms consistent with the child molest syndrome.

The trial court sustained the petitions and after a jurisdictional hearing, placed Sara in the custody of her maternal grandparents. This appeal followed.

## DISCUSSION

### I.

### THE CHILD MOLEST SYNDROME EVIDENCE

As part of its case-in-chief at the jurisdictional hearing, petitioner called Dr. Maria Vidos, a clinical psychologist who had treated Sara. Dr. Vidos

---

[2] All further statutory references are to the Welfare and Institutions Code.
[3] This incident was not reported until fall 1984 after Sara began living with the foster family. The therapist mentioned did not begin seeing Sara until May 31, 1985.

testified she had diagnosed Sara as suffering from a "post-traumatic stress disorder." Appellant objected when petitioner asked what trauma caused this condition.

Appellant's objection was on the ground of relevancy citing *People* v. *Bledsoe* (1984) 36 Cal.3d 236 [203 Cal.Rptr. 450, 681 P.2d 291]. Respondent urged in reply that the standard for admissibility of such evidence in juvenile proceedings is not the same as in criminal proceedings and that such expert psychological testimony was admissible under Evidence Code section 801 and the reasoning of *In re Cheryl H.* (1984) 153 Cal.App.3d 1098 [200 Cal.Rptr. 789].

The trial court found *Bledsoe* applicable to the proffered evidence but then ruled that all that *Bledsoe* applied to was the accusation statements of the child to the psychologist and the opinion of the psychologist that this child had been molested. The court barred the witness from testifying that Sara had actually been molested but permitted general evidence concerning the child molest syndrome.

Dr. Vidos testified that victims of child molestation exhibit certain common characteristics. These include (1) consistency in recounting the molestation to different people, (2) denial the molestation occurred, (3) sexual knowledge beyond that usually associated with the victim's age, (4) the ability to recall the molestation over an extended period of time, and (5) a feeling of loss of control over the victim's life. Dr. Vidos mentioned one researcher in the field by name but could not recall the name of his work nor the names of others who had written on the syndrome. She testified the syndrome was not recognized by the American Psychological Association (APA) or any other professional organization. It is not included as a syndrome in the APA's Diagnostic and Statistical Manual (DSM). She further testified she was unaware of any studies used to develop this syndrome that compared the reactions of molested and nonmolested children.

Petitioner also called Dr. Theron Kinsey, another clinical psychologist who had treated Sara. Dr. Kinsey elaborated on symptoms of the child molest syndrome. He testified victims often are angry or depressed and exhibit a variety of behavioral problems. They may suffer from sleep disturbances or eating disorders. Victims show a false sense of maturity. Their relationships with others are disturbed; they may trust too much or too little. Victims are fearful of the purported molester. They consistently name one person as the molester, although details of the incident may be revealed only over time. Dr. Kinsey acknowledged the syndrome was not included in the DSM or recognized by any professional group. He too was unaware of any control group studies done with nonmolested children.

The court allowed numerous witnesses, including these psychologists, to testify about Sara's behavior and statements to demonstrate the existence of the symptoms associated with the child molest syndrome.

A brief review of other "syndrome evidence" in California courts is necessary before analyzing the admissibility of the child molest syndrome in the present case.

In *People* v. *Jackson* (1971) 18 Cal.App.3d 504 [95 Cal.Rptr. 919], the court approved the use of expert testimony concerning the battered child syndrome. The elements of this syndrome consist primarily of objective physical evidence: "(1) the child is usually under three years of age; (2) there is evidence of bone injury at different times; (3) there are subdural hematomas with or without skull fractures; (4) there is a seriously injured child who does not have a history given that fits the injuries; (5) there is evidence of soft tissue injuries; [and] (6) there is evidence of neglect." (*Id.,* at p. 506.) The syndrome indicates a child with these types of injuries did not receive them by accidental means. The testifying doctor commented that these injuries are typically inflicted by someone ostensibly caring for the child; however, he did not give any opinion as to who might have been responsible for the particular injuries. (*Id.,* at pp. 506-507.) In ruling the syndrome evidence admissible, the court noted this subject had been extensively studied by medical science and that the battered child syndrome had become an accepted medical diagnosis. (*Id.,* at p. 507; see also *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299].)

In *Bledsoe, supra,* 36 Cal.3d 236, the Supreme Court addressed the admissibility of evidence concerning the "rape trauma syndrome." A rape counselor testifying for the prosecution described the syndrome as "an acute stress reaction to trauma," and explained the three psychological phases of the syndrome, i.e., disorientation, recognition and integration. (*Id.,* at pp. 242-243.) The counselor concluded the victim suffered from rape trauma syndrome. (*Id.,* at p. 244.) On appeal, defendant contended evidence of a rape trauma syndrome was inadmissible because it did not meet the *Kelly-Frye* standard of reliability for new scientific methods of proof. (*People* v. *Kelly* (1976) 17 Cal.3d 24, 30-32 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013, 1014 [34 A.L.R. 145].)

The court noted the syndrome evidence was introduced not to rebut a defense argument that the victim's behavior was inconsistent with a claim of rape (*Bledsoe, supra,* 36 Cal.3d at pp. 247-248), but to prove the rape had in fact occurred. The court rejected the prosecution's argument that this use was proper as in the battered child syndrome cases. The court found the

rape trauma syndrome was devised as a therapeutic treatment tool, not as a means of determining whether a rape actually occurred. (*Id.,* at pp. 249-250.) Because of the purpose and nature of the rape trauma syndrome, the court concluded syndrome evidence was not admissible to prove the victim was raped. (*Id.,* at pp. 250-251.)

The child molest syndrome has been discussed in two cases from the Fifth District, *People* v. *Willoughby* (1985) 164 Cal.App.3d 1054 [210 Cal.Rptr. 880], and *People* v. *Roscoe* (1985) 168 Cal.App.3d 1093 [215 Cal.Rptr. 45]. In *Willoughby,* the court in one sentence concluded testimony of a "sexual trauma expert" was inadmissible on the subject of the victim's truthfulness. (164 Cal.App.3d at p. 1069.) In *Roscoe,* the prosecution offered evidence of the child molest syndrome to rehabilitate the victim's credibility after defendant claimed the victim's testimony was unreliable. (168 Cal.App.3d at pp. 1096-1097.) A psychologist testified concerning the symptoms commonly exhibited by molest victims and further testified about this particular victim's credibility. (*Id.,* at pp. 1098-1099.) The court noted this testimony ran contrary to the principles enunciated in *Bledsoe, supra:* "Where the expert refers to specific events, people, personalities and bases his opinion as to credibility on his diagnosis of *this* witness, then the conclusion that the witness is credible rests upon the premise that the diagnosis is accurate, and that in fact molestation had occurred. The jury in effect is being asked to believe the diagnosis, to agree that the doctor's analysis is correct and that the defendant is guilty." (*Id.,* at pp. 1099-1100, fn. omitted; italics in original.) The court concluded rehabilitating testimony regarding the child molest syndrome is admissible only if it pertains to victims as a class and does not refer to the specific complainant. (*Id.,* at pp. 1100-1101.) The court did not analyze this evidence under the *Kelly -Frye* guidelines.

The instant case does not involve the rehabilitation of the victim's credibility; the prosecution offered testimony concerning the child molest syndrome in its case-in-chief. The *Roscoe* decision and the *Bledsoe* court's implicit approval of the use of this evidence to rebut defense allegations of incredibility are therefore irrelevant to the present case.[4]

█ We turn to the central issues before us and their resolution: Is the *Kelly -Frye*[5] *test applicable to the evidence here in dispute in view of the*

---

[4]Moreover, under the guidelines established by *Roscoe,* the expert witnesses offered improper testimony centering on the specific victim. Dr. Vidos testified Sara suffered from a "post-traumatic stress disorder" and consistently described the molestation, a symptom associated with the child molest syndrome. Numerous other witnesses also testified regarding statements made by Sara for the purpose of showing behavior consistent with the syndrome.

[5]The *Kelly-Frye* standard is the appropriate basis for determining the admissibility of child molest syndrome testimony. (See *People* v. *Bledsoe, supra,* 36 Cal.3d at p. 247, fn. 7; see also

*purpose for which the evidence was tendered? We hold the Kelly-Frye* test to be applicable. Does the proffered evidence meet the *Kelly-Frye* test? We hold that it does not.

The *Kelly-Frye* criteria as applied to the facts at bench must be viewed in connection with Evidence Code sections 720 and 801. Section 720 allows expert testimony if the expert possesses "special skill, experience, training, or education to qualify him as an expert *on the subject to which his testimony relates.*" (Evid. Code, § 720, subd. (a) in pertinent part with italics added.)

Section 801 requires that expert opinion be based on matter ". . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (Evid. Code, § 801, subd. (b) in apposite part.)

*Bledsoe* instructs that the purpose of expert witness testimony may determine if the witness is an expert as to the proposition asserted. Thus *Kelly-Frye* and *Bledsoe* establish criteria for scientific expertise for the sufficiency of qualification as an expert under Evidence Code section 720 and the reasonableness of formation of a purported expert opinion under Evidence Code section 801. In that light the purpose of the opinion evidence objected to must be examined.

The record is barren of any express statement as to the purpose for which the syndrome evidence was offered. We have considered that the testimony was sought to be adduced in the case-in-chief, the discussion of admissibility in the record, the Dr. Vidos testimony alluded to in footnote 4, *ante,* and respondent's contention on appeal that a psychologist may testify that the child was sexually abused and exhibits behavior consistent with children who have been sexually abused. It is undoubted that the purpose of the evidence with reference to the child molest syndrome tendered in the court below was to show that this child had been sexually abused.

So finding, the *Kelly-Frye* test is applicable and whether or not the proffered evidence meets that test must be determined.

The Supreme Court in *Kelly-Frye* set forth a two-step process for determination of the admissibility of expert witness testimony based upon a newly-emerged scientific technique. The court stated:

"[A]dmissibility of expert testimony based upon the application of a new scientific technique traditionally involves a two-step process: (1) the *reliabil-*

---

*People* v. *McDonald* (1984) 37 Cal.3d 351, 372-373 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) Appellant properly raised the *Kelly-Frye* point by her relevancy objection and reference to *Bledsoe.*

*ity of the method* must be established, usually by expert testimony, and (2) the witness furnishing such testimony must be properly *qualified as an expert to give an opinion* on the subject." (Original italics, *People* v. *Kelly, supra,* 17 Cal.3d at p. 30.)[6] Reliability of the evidence is established by showing "the procedure has been generally accepted . . . in the scientific community in which it developed[,]" (*People* v. *McDonald, supra,* 37 Cal.3d at p. 372; *People* v. *Kelly, supra,* 17 Cal.3d at p. 30) thus assuring that " 'those most qualified to assess the general validity of a scientific method will have the determinative voice.' " (Italics omitted, citation omitted, *People* v. *Kelly, supra,* 17 Cal.3d at p. 31.)

■ The evidence adduced at the jurisdictional hearing fails to meet this standard. Psychologists testified the syndrome is neither included in the DSM nor recognized by the American Psychological Association or any other professional organization. They described the syndrome as being in the beginning stages of development and acceptance. No treatises on the syndrome were introduced into evidence. The psychologists further testified they did not know how the symptoms of the syndrome were developed; they knew of no studies comparing the reactions of children known to be molested with those who claimed to be molested or with those who were not molested. A basic defect of the syndrome is thus apparent: the syndrome was developed on the assumption the children studied were in fact molested.[7] Moreover, while no one at the hearing testified directly concerning the reason for the syndrome's development, it appears to be a tool for therapy and treatment, much like the rape trauma syndrome. Consequently, the same problem discussed in *Bledsoe* may be present in the case of the child molest syndrome: if it was not developed as a truth-seeking procedure but rather as a therapeutic aid, it cannot be used for a different purpose, i.e., to prove a molestation occurred.

*Cheryl H.* is not dispositive of appellant's contentions on this appeal. *Cheryl H.* did involve a dependency hearing and the court there held that an expert may testify that a victim's conduct was typical of that of a sexually abused child, although the expert was not permitted to identify the person believed to be the abuser. (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1116-1119 [200 Cal.Rptr. 789].) We do not find *Cheryl H.* persuasive or controlling in the present case for the following reasons: (1) the case antedates the Supreme Court's pronouncements in *Bledsoe,* (2) in *Cheryl H.* no

---

[6] Appellant does not question the need for expert testimony or challenge the testifying witnesses' qualifications. We therefore do not address the second prong of this analysis.

[7] One psychologist, Dr. Alfred French, harshly criticized the methodology employed by a leading proponent of the child molest syndrome, Dr. Roland Summit, the researcher relied upon by petitioner's witnesses. Dr. French testified Dr. Summit performed no control studies and made no distinction between children of different developmental ages.

objection was made at trial to the syndrome evidence (*id.,* at p. 1115, fn. 14), and (3) the *Cheryl H.* court did not analyze the expert evidence in terms of *Kelly-Frye.*

No *Kelly-Frye* foundational objection having been raised in *Cheryl H.* at the trial level, the point was not preserved for appellate consideration. (See Evid. Code, § 353.) The objection was preserved here. Accordingly, responding to that objection we hold that the evidence was inadmissible due to lack of foundational proof that the child molest syndrome has been generally accepted in the scientific psychological community. (See *In re Amber B.* (1987) 191 Cal.App.3d 682 [236 Cal.Rptr. 623].) We recognize that the rules of evidence are relaxed in dependency proceedings but expert evidence not shown to be reliable under the requisite *Kelly-Frye* criteria and properly objected to remains inadmissible.

Because the child molest syndrome does not meet the basic requirements of the *Kelly-Frye* standard, evidence concerning the syndrome was improperly admitted. We therefore turn to the issue of prejudice.

Testimony concerning the child molest syndrome permeated the jurisdictional hearing. Psychologists testified concerning the syndrome and the symptoms exhibited by Sara. The court permitted numerous witnesses to testify concerning statements Sara made for the purpose of showing her behavior was consistent with the child molest syndrome. Sara gave inconsistent versions of events on different occasions. Given Sara's young age at the time the events allegedly occurred, the length of time between the events and the hearing and the extensive questioning of Sara by numerous parties in the interim, we cannot conclude the admissibility of the syndrome evidence was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

We cannot resolve from this record that the court would have reached the same conclusion in this matter unbuttressed by the testimony of the proffered "experts" improperly admitted. The residual evidence was that of the minor child of four years at the time of trial testifying on August 28, 1985, to events of "during the year prior to December 1, 1983," which had not been reported by the child until the fall of 1984, after Sara commenced living with her foster family. The only additional evidence of any note was the rank hearsay in the social services report to which the trial judge was not bound to give credence in view of the attendant untrustworthiness of such hearsay being void, as it is, of a sifting under oath for reliability and truthfulness by careful cross-examination. We thus conclude "that it is reasonably probable that a result more favorable to the appealing party

would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836.)

## II.-VI.*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed with directions to the juvenile court to decide the petition absent the improperly admitted evidence with further instruction to immediately decide whether the child should be returned to her mother pendente lite or remain in placement

Blease, Acting P. J., and Sparks, J., concurred.

The petitions of all parties for review by the Supreme Court were denied November 18, 1987.

---

*See footnote, *ante,* page 585.