**UNITED STATES, Appellee,**

v.

**Private E1 Michael W. KING, 437–94–2692, United States Army, Appellant.**

**ACMR 8701093.**

U.S. Army Court of Military Review.

13 Oct. 1988.

For Appellant: Chuck R. Pardue, Esquire (argued); Lieutenant Colonel Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain Ralph L. Gonzalez, JAGC, Captain Debra D. Stafford, JAGC, (on brief).

For Appellee: Captain Joseph P. Falcone, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON PETITION FOR NEW TRIAL

WERNER, Judge:

On mixed pleas, appellant was convicted in May 1987 by a general court-martial composed of officer members of forcible anal sodomy, aggravated assault with a dangerous weapon, and violation of a lawful general regulation by possessing a switchblade knife, violations of Articles 92, 125 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 925 and 928 (1982) [hereinafter UCMJ]. The convening authority approved his sentence to a dishonorable discharge, confinement for ten years, and forfeiture of all pay and allowances.

On appeal, appellant raises several issues of which only the following warrant comment: sufficiency of the evidence and admissibility of a record of nonjudicial punishment. Appellant has also petitioned this court for a new trial pursuant to Article 73, UCMJ, and Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1210(f) [hereinafter R.C.M.]. For the reasons set forth below, we find the evidence sufficient, the error in the admission of the record of nonjudicial punishment waived, and no lawful basis for granting a new trial. Accordingly, we affirm his conviction and sentence.

## I

The incident giving rise to the charges involved appellant's alleged homosexual rape of Private D. in a barracks room in Mainz, West Germany. According to Private D., the appellant invited Private D. to his barracks room to watch videotaped movies one evening in late August or early September 1986. While D. was watching a movie, the appellant excused himself to go to the bathroom. When he returned, he placed a switchblade to D.'s neck and ordered him to drop his sweat pants. Despite D.'s protestations and attempts to dissuade him, the appellant pushed D. down on a bed and anally sodomized him using a hair dressing as a lubricant. Private D. testified that he had drunk six beers that evening which may have affected his ability to remember details concerning the incident. He stated that he had not told anyone about the incident until the following week because he was embarrassed and afraid he would be labelled a homosexual by the other members of his unit. The incident was reported to military authorities after D. revealed the information while undergoing psychiatric treatment several months later.

Major Gary Newsome, a psychiatrist with considerable experience in the treatment of rape victims, testified that D. had been referred to him in November 1986 following a suicide attempt. During his first interview with D., Major Newsome found D. withdrawn and depressed. He determined that D. was experiencing decreased sleep; suffered from increased anxiety and guilt; as an alcoholic, had increased alcohol abuse; and had become suicidal. D. disclosed that he had been sexually assaulted but was reluctant to discuss it. With encouragement from other members of the hospital staff, D. finally told Major Newsome all of the details of the incident during their third interview in December 1986.[1] Major Newsome testified that D.'s behavior reflected the classical symptoms of post-traumatic stress disorder similar to those exhibited by victims of sexual assaults. When questioned by the trial counsel concerning D.'s failure to report the incident to military authorities, Major Newsome explained that many victims of sexual assaults do not report such offenses to legal authorities because they fear that they won't be believed, because they are apprehensive about exposing their victimization to the legal system, and because they psychologically deny that the incident ever happened.

At no time did the appellant object to the admissibility of Major Newsome's testimony although he did express concern about its impact on the court members and suggested the necessity for proper instructions before findings. Nevertheless, he neither demanded instructions nor objected to those that were given. The defense case consisted of two witnesses, D.'s squad and platoon leaders, who attested to D.'s reputation for untruthfulness and the appellant's testimony which categorically denied the commission of the offenses. Appellant stated that he and D. had been roommates but added that they had been separated because they did not get along with each other. In surrebuttal, the government called the appellant's company commander who testified that appellant also had a reputation for untruthfulness.

## II

Pursuant to our mandate under Article 66, UCMJ, we must determine not only the

---

1. In describing Private D.'s behavior during the interview, Major Newsome stated:

   Well, it wasn't real subtle, or whatever. Some things that I observe as a psychiatrist are pretty subtle. This was not. I mean, he was moving around in his chair or whatever, and wringing his hands, and his voice was quavering, and his eyes were filling up with tears, or whatever, and he would be gripping you know—the white knuckle sign—the chair, and it was very very difficult, even though I felt that we had a pretty good rapport—I think

   [D.], at that point in time, trusted me as much as anybody in his life—and he was having a great deal of difficulty even talking about the details with me, or whatever, so mainly, like I said, a lot of agitation and wringing of hands, and sweating, and, you know, like I said, he was breaking out in a sweat, so he was obviously going through a pretty profound emotional experience even attempting to tell me the briefest details as far as what had happened.

legal sufficiency of the evidence but also its factual sufficiency. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

Appellant's argument on sufficiency is one of fact and not law. *United States v. Turner*, 25 M.J. at 325. He argues that the victim's version of the incident is too incredible to be believed especially considering his reputation for untruthfulness. He refers to the absence of any fresh complaint by D. and his inability to remember relevant details surrounding the incident such as precise dates. He implies that D. had a motive to lie because of the animosity which existed between them. While he has not directly attacked Major Newsome's testimony, the appellant has implicitly denigrated its importance by asserting that the military judge failed to adequately instruct the court members as to its weight. In the oft-cited case of *United States v. Teeter*, we held:

In determining the weight and sufficiency of the evidence as to the guilt or innocence of the accused, the evidence must be considered as a whole. The rule requiring the trier of fact to be convinced beyond a reasonable doubt of the guilt of the accused does not require the evidence to be free of conflict. If the evidence is in conflict, it should be reconciled by the trier of fact if reasonably possible. The existence of conflict does not necessarily mean that the accused's witnesses are right and the prosecution witnesses are wrong. The testimony of the witnesses for the prosecution may be believed as against the testimony of the witnesses for the accused.

*United States v. Teeter*, 12 M.J. 716, 722 (A.C.M.R.1981), *aff'd in part, rev'd in part*, 16 M.J. 68 (C.M.A.1983) (citations omitted).

In a recent case, this court held that testimony by a psychiatrist that an alleged victim suffered from rape trauma syndrome was admissible as a valid, reliable and generally accepted scientific principle. *United States v. Carter*, 22 M.J. 771 (A.C. M.R.1986), *affirmed*, 26 M.J. 428 (C.M.A. 1988). At issue was whether the act of sexual intercourse was consensual or forc-

ible. The psychiatrist testified that the victim exhibited symptoms consistent with rape trauma syndrome and that "she believed that there was very little chance of her having being [sic] tricked into such a diagnosis by the victim." *United States v. Carter*, 22 M.J. at 772. In that case, this court held:

We believe that rape trauma syndrome evidence will assist the trier of fact in determining the issue of consent. This would be particularly true in trials involving court members where such members would likely have little or no personal experience with victims of rape. Faced with a factual situation like the one before us, where there are no eyewitnesses to the assault nor apparent physical injuries suffered by the victim that would suggest force, the admission of rape trauma syndrome evidence serves as a helpful tool by providing the factfinders with knowledge regarding a victim's psychological reactions to an alleged sexual assault.

*United States v. Carter*, 22 M.J. at 775. In affirming this court's decision, the United States Court of Military Appeals approved the admission of testimony of properly qualified experts concerning the symptoms of Rape Trauma Syndrome.

■ The evidence of post-traumatic stress disorder falls within the parameters of the holdings in *Carter* concerning rape trauma syndrome. Major Newsome's testimony is relevant yet it does not amount to an opinion that Private D. was credible. The military judge instructed the members that they were not to consider Major Newsome's testimony in determining whether an act of forcible anal sodomy had in fact occurred or in determining whether Private D. had fabricated the incident. The military judge further instructed the members that they should not be influenced by Major Newsome's testimony.

■ We find, on the basis of the entire record, that the conflict between the appellant's testimony and Private D.'s was properly resolved by the court members against the appellant. Contrary to appellant's assertions, Private D.'s testimony is plausible

despite his inability to remember minor details surrounding the incident and his failure to promptly report it. The evidence of trauma is consistent with the victim's testimony as it explained how the victim was psychologically affected by the sexual assault upon him. While a crime victim's failure to remember details of a crime or failure to report an incident may invite the conclusion that the crime did not occur, it can, when coupled with evidence of the effects of trauma, actually strengthen the government's case against an accused. This case is one of those in which the devastating effects of appellant's assault on the victim were substantiated by the medical diagnosis that the victim possessed the psychologically debilitating symptoms of one who had suffered such an assault. Under the circumstances, appellant's guilt of the offenses is legally and factually supported beyond a reasonable doubt.

### III

During sentencing, the military judge admitted copy "1" of DA Form 2627, Record of Proceedings under Article 15, UCMJ, dated August 1986, without objection. Attached to it was an authentication certificate from the custodian of appellant's military personnel records. The document directed that the copy be filed in the "restricted fiche of [appellant's] OMPF." According to Army Regulation 27–10, Legal Services: Military Justice, paragraph 3–37c(1) (25 Sep. 1986) [hereinafter Army Reg. 27–10], copy 1 of DA Form 2627 is to be filed as follows:

> For those Article 15s directed for filing on the performance fiche of the OMPF, forward to the MILPO for filing in the MPRJ. Copy one will be filed in the permanent section of the MPRJ unless the original Article 15 is transferred from the performance to the restricted fiche of the OMPF. In this case, copy

one will be withdrawn from the MPRJ and destroyed.

Army Reg. 27–10, para. 3–37c(2), further provides that:

> For those Article 15s directed for filing on the restricted fiche of the OMPF [copy 1] will be filed in the unit personnel files and destroyed at the expiration of 2 years from the date of punishment or on the member's transfer, whichever occurs first.

Finally, Army Reg. 27–10, para. 3–44b, provides:

> A record of nonjudicial punishment, not otherwise inadmissible, may be admitted at courts-martial or administrative proceedings from any file in which it is properly maintained by regulation.

The document in issue was not maintained in accordance with the regulatory provision governing the filing of Article 15's in the restricted fiche of appellant's official military personnel file (OMPF). Since the government introduced the document by way of an authentication certificate from the custodian of appellant's military personnel records, it is clear that it was taken from the appellant's MPRJ. By the express language of the regulation, when an Article 15 is directed to be filed in the restricted fiche of a servicemember's OMPF, copy one can only exist in the unit personnel files. *See United States v. Shears*, 27 M.J. 509, (A.C.M.R.1988). Otherwise, it must be destroyed.

We have not hesitated to grant relief on appeal to an accused who objected to the introduction into evidence of records of nonjudicial punishment that were not maintained in accordance with departmental regulations. *United States v. Yong*, 17 M.J. 671 (A.C.M.R.1983).[2] However, in this case appellant failed to object. Under R.C. M. 1001(b) and Mil.R.Evid. 103(a), this is a critical distinction. Defense counsel are

---

**2.** *See also United States v. Henderson*, 23 M.J. 861 (A.C.M.R.1987). Unlike our decision in *United States v. Yong*, this case does not reveal whether or not the appellant objected to the introduction of the record of nonjudicial punishment. During an earlier era, the Court of Military Appeals consistently employed regulatory requirements governing the maintenance of records of nonjudicial punishment as rationales for declaring them inadmissible. *See United States v. Cohan*, 43 C.M.R. 309 (C.M.A. 1971); *United States v. Palmer*, 43 C.M.R. 583 (A.C.M.R.1970).

**550**

responsible for making timely objections to documents reflecting the past conduct and efficiency of the accused. *See United States v. Salgado–Agosto,* 20 M.J. 238 (C.M.A.1985). Failure to do so operates as a waiver of that issue in the absence of plain error. "In order to constitute plain error, the error must not only be both obvious and substantial, it must also have 'had and unfair prejudicial impact on the jury's deliberations.'" *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986). We hold that the defense counsel's failure to object to the admission of the document in issue waived the error. We also hold that the error was not plain error as it was neither so obvious nor so substantial that it unfairly affected the court's deliberations.

## IV

Appellant also asserts that he should be granted a new trial under Article 73, UCMJ, because of fraud on the court and newly-discovered evidence. We disagree.

■ One basis for appellant's petition is alleged admissions by Private D. to two other individuals in March and April 1987, that he had not been sodomized by the appellant. In support, the appellant submits two post-trial affidavits made to a criminal investigator in July 1987, by the individuals. Appellant also submits a post-trial statement given by Private D. to the criminal investigator. This latter statement does contain some minor inconsistencies as to dates but is otherwise consistent with his testimony at trial. As an additional basis, appellant contends that he was denied certain, unspecified medical records which he ostensibly requested of Major Newsome, the psychiatrist, but did not request from the custodian of records at the hospital.

In general, a new trial may be granted only on grounds of newly discovered evidence or fraud on the court-martial. R.C.M. 1210(f)(1). One example of fraud within the meaning of the rule is perjury by a key witness. *See* R.C.M. 1210(f)(1) discussion. When the perjury is discovered after trial and was not, in the exercise of due diligence by the defense, discoverable before

trial, then it may amount to newly discovered evidence as well. R.C.M. 1210(f)(2). The distinction is academic since neither ground warrants a new trial unless it might have sufficiently significant impact to produce a different result. *United States v. Bacon,* 12 M.J. 489 (C.M.A.1982); *United States v. Thomas,* 11 M.J. 135 (C.M.A.1981). This very heavy burden rests with appellant.

■ The inconsistent statements alleged to be newly discovered evidence only go to the weight of the government's case, a matter which rarely constitutes adequate grounds for a new trial. *United States v. Thomas,* 11 M.J. 135, 138 (C.M.A.1981). We find, after an examination of the evidence of record and the post-trial statements, that this basis for appellant's petition is without merit. Nor is the appellant's assertion that a fraud was committed in securing his conviction persuasive. Due diligence in requesting medical records from the proper custodian of the records sought and in ensuring that the government has complied with discovery requests likely would have turned up whatever information appellant now says he was denied.

Finally, we are unpersuaded that a different fact-finder would reach a different result given the "newly discovered evidence" and the assistance of medical records in light of the trial testimony of Private D. and the expert testimony on the effects of trauma. Accordingly, we see no justification to disturb the trial result. Appellant's petition for a new trial is denied.

The court has carefully examined the allegations made by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and, insofar as they are not discussed above, they are deemed to be without merit.

The findings and sentence are affirmed.

Senior Judge DeFORD and Judge KANE concur.