UNITED STATES, Appellee,

v.

Captain Jose M. SUAREZ, 530–56–9798,
United States Army, Appellant.

ACMR 8903603.

U.S. Army Court of Military Review.

11 April 1991.

For Appellant: Kenneth G. Gale (argued); Captain James K. Lovejoy, JAGC (on brief).

For Appellee: Captain Gary A. Khalil, JAGC (argued); Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, Captain Suarez was convicted by a general court-martial of indecent assault, two specifications of committing indecent acts, and communicating a threat to kill, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (1982). The members sentenced the appellant to dismissal from the service and confinement for five years. The convening authority approved the sentence.

The appellant asserts, *inter alia*, that the military judge committed plain error in permitting an expert witness to testify concerning "Child Sexual Abuse Accommodation Syndrome." He also contends that the defense counsel provided ineffective assistance of counsel in not objecting to the

testimony concerning this syndrome. We reject both contentions and affirm.

## I. Facts

The evidence presented at trial established that Captain Suarez fondled the buttocks, vaginal areas and breasts of his two adopted daughters on divers occasions during a one-year period. In addition, he threatened to kill one of the daughters if she told anyone about the touching. The crucial evidence in the prosecution's case came from the daughters themselves and from a psychologist, Dr. Burns, who explained that the children suffered from different aspects of a condition which he identified as Child Sexual Abuse Accommodation Syndrome.

The appellant's adopted daughters, S and A (ages 11 and 12) testified against Captain Suarez quite differently in the manner and content of their testimony. S testified that she resided in a hospital in California for seven months preceding trial. While in the hospital, she alleged for the first time that her adopted father had molested her. As a witness, S was hostile to her father and direct in her accusations. The other adopted daughter, A, reluctantly acknowledged her adopted father's touching but minimized his actions and attributed his touching to innocent playfulness, affection, and "joking around." A had testified at the Article 32, UCMJ, investigation that her father's touching was wrong. At trial, however, she denied any wrongdoing on his part.

In order to explain the dissimilar behavior of these two children, the government presented the expert testimony of Dr. Burns, a clinical psychologist specializing in child sexual abuse. Dr. Burns was present in the courtroom during the testimony of S and A. He testified that he had treated S for severe emotional problems and that she had been removed from the Suarez home in Germany and put into a hospital for disturbed children in California on his recommendation. Dr. Burns testified that he had never interviewed or treated A.

In explaining the girls' failure to report promptly the fondling and A's recantation of parts of her Article 32 testimony, Dr. Burns provided information about the Child Sexual Abuse Accommodation Syndrome. He described the syndrome in the following terms:

Child Sex Abuse Accommodation Syndrome was formulated by Roland Summit, a psychiatrist out of the UCLA clinic. It helps explain why some children, after initially indicating that sexual abuse has occurred, later on change their stories; why some children go through a sex abusing scenario at home rather than reporting it to someone. It involves several features, but essentially you have— first of all, if I may refer to some notes—you have a situation where there is guaranteed secrecy. Secondly, the child has to feel relatively helpless. In other words, a child in a home with parents who are seen or perceived as the providers. Given those situations and that sex abuse has occurred, you will sometimes have what is called an "accommodation" to the situation, in which, essentially, a child goes along with the sex abuse that has occurred. Later on, you will have, when it finally is made manifest, which is often when the child is getting a little more independent, delayed, conflicted or unconvincing kinds of disclosures to various people, often someone at school. And, finally, a retraction, because the child perceives that the adults in the environment do not really believe her and are asking all kinds of questions about why she did not take action and are accusing her of lying and so forth. She will often retract because she does not want to be in the position of sending her father to prison or breaking up the family.

The trial counsel asked Dr. Burns if he noted any of the characteristics of the syndrome in either child. Dr. Burns answered:

In [A], a number of the features of this syndrome are present. It was very apparent to me, in my mind, that the retraction was a part of this syndrome. With [S], her behavior at the time I was treating her showed a number of these fea-

tures. Today, I don't see many of these features present in her.

## II. Admissibility of Dr. Burns' Testimony

■ Until 1987, the prevailing test for admissibility of scientific evidence under military law was the test first established in *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923). The *Frye* test required that scientific evidence, to be admissible, must have progressed to the point of being generally accepted in the scientific community. The *Frye* test was the accepted standard of admissibility in military courts until the adoption of the Military Rules of Evidence [hereinafter Mil.R.Evid.] brought that test into question. *See generally, United States v. Gipson*, 24 M.J. 246, 250–1 (C.M.A.1987). In *Gipson*, the Court of Military Appeals rejected the *Frye* test as the "independent controlling standard of admissibility" for emerging scientific evidence. *Gipson*, 24 M.J. at 251; *United States v. Abeyta*, 25 M.J. 97, 98 (C.M.A.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Noting the increasing criticism of the *Frye* test, the Court concluded that Military Rule of Evidence 702 "superseded" the *Frye* test. *Gipson*, 24 M.J. at 251.

■ Mil.R.Evid. 702 is the primary rule dealing with the admissibility of scientific evidence in the form of expert testimony. Under this rule, the key question in determining the admissibility of expert testimony is whether it would be helpful to the factfinders in resolving the facts in issue. *Gipson*, 24 M.J. 246; *United States v. Nelson*, 25 M.J. 110 (C.M.A.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988); *United States v. Mustafa*, 22 M.J. 165 (C.M.A.1986), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986). The practical effect of Mil.R.Evid. 702 is to make more evidence available to the factfinder than was permitted previously under the *Frye* test. *United States v. Snipes*, 18 M.J. 172, 178 (C.M.A.1984).

■ For scientific evidence to be admissible under current military law, the military judge must determine that: (1) the evidence is relevant within the meaning of Mil.R.Evid. 401; (2) it is helpful to the factfinder within the meaning of Mil.R. Evid. 702; and, (3) its probative value outweighs the danger of prejudice, as outlined in Mil.R.Evid. 403. *United States v. Abeyta*, 25 M.J. at 98. Admissibility of scientific evidence in the form of expert witness "syndrome" testimony is determined by these standards.

Subsequent to *Gipson*, the Court of Military Appeals and this Court have permitted "syndrome" evidence to explain the action of victims in sexual assault cases. *United States v. Carter*, 26 M.J. 428 (C.M.A.1988) (rape trauma syndrome); *United States v. King*, 27 M.J. 545 (A.C.M.R.1988), *aff'd on rehearing*, 28 M.J. 855 (A.C.M.R.), *pet. denied*, 29 M.J. 329 (C.M.A.1988) (post-traumatic stress disorder). Indeed, some "syndrome" evidence was permitted even before *Gipson*. *See, e.g. United States v. White*, 23 M.J. 84 (C.M.A.1986) (battered child syndrome).

■ Military cases subsequent to *Gipson* have also upheld the admissibility of expert testimony concerning patterns of conduct and symptoms of children who have suffered child sexual abuse. *United States v. Stark*, 30 M.J. 328 (C.M.A.1990); *United States v. Lee*, 28 M.J. 52 (C.M.A. 1989). A key limitation on this evidence is that the expert witness is not permitted to testify that the victim is telling the truth, or give an expert opinion that the victim should be believed. *United States v. Harrison*, 31 M.J. 330 (C.M.A.1990); *United States v. Arruza*, 26 M.J. 234 (C.M.A.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *United States v. Petersen*, 24 M.J. 283 (C.M.A.1987). What is novel in the case before us is the presentation of the expert's testimony under the label of "Child Sexual Abuse Accommodation Syndrome."

Child Sexual Abuse Accommodation Syndrome was first propounded by Dr. Roland Summit, a California psychiatrist specializing in treatment of child sexual abuse. *See* Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Int'l.J. of Child

Abuse and Neglect 177 (1983). A number of state appellate courts have discussed this specific syndrome and its admissibility at trial. *See People v. Bowker*, 203 Cal. App.3d 385, 249 Cal.Rptr. 886 (Ct.App. 1988); *People v. Bothuel*, 205 Cal.App.3d 581, 252 Cal.Rptr. 596 (Ct.App.1988); *Seering v. Department of Social Services*, 194 Cal.App.3d 298, 239 Cal.Rptr. 422 (Ct.App. 1987); *Sacramento County v. Christine I.*, 194 Cal.App.3d 585, 239 Cal.Rptr. 605 (Ct. App.1987); *Duckett v. State*, 797 S.W.2d 906 (Texas Crim.App.1990) (*en banc*); *Marcum v. State*, 299 Ark. 30, 771 S.W.2d 250, 254 (1989) (Hickman, J. concurring); *State v. Drachin*, 1989 WL 69466 (Del. Fam.Ct.1989), *aff'd*, 1990 WL 47350 (Del. Super.Ct.1990). In jurisdictions still bound by the *Frye* test, the courts have generally not permitted the admission of such evidence. In California, for instance, evidence of this particular syndrome has been rejected as not being generally accepted in the scientific community. *See, e.g., People v. Leon*, 214 Cal.App.3d 925, 263 Cal.Rptr. 77 (Ct.App.1989); *Seering*, 239 Cal.Rptr. at 430–31.

Courts in jurisdictions operating under the Federal Rules of Evidence, or under rules similar thereto, have been more willing to admit evidence of Child Sexual Abuse Accommodation Syndrome. *See, e.g.*, the well-reasoned opinion of the Texas Court of Criminal Appeals in *Duckett v. State*, 797 S.W.2d at 906, which *en banc* considered the admissibility of evidence of this syndrome under Texas Rule of Evidence 702. The Texas evidentiary rule is identical in wording to Mil.R.Evid. 702. The Texas court found that a number of states with identical evidentiary rules had permitted similar testimony. *Id.* at 909 n. 8, *citing, inter alia, State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); *State v. Myers*, 359 N.W.2d 604 (Minn.1984). After lengthy analysis, the court concluded that the trial judge properly admitted the expert witness' testimony. *Duckett, id.* at 920.

We find that Dr. Burns' testimony regarding the patterns of conduct of the two child victims was properly admitted and was really no different in substance than that which has been permitted under Mil.R. Evid. 702 and prevailing military case law. Attaching to the testimony the label of "Child Sexual Abuse Accommodation Syndrome" neither changed the nature of the testimony nor unduly enhanced the expert witness' testimony. Moreover, we find that the testimony was relevant, and that the probative value of the evidence outweighed the danger of prejudice. The cautionary instructions given by the military judge regarding expert testimony put Dr. Burns' testimony into proper perspective and insured that his testimony did not usurp the factfinders' duties. We hold that the military judge properly admitted Dr. Burns' testimony into evidence.

### III. Ineffectiveness of Counsel

■ Captain Suarez alleged ineffectiveness of his trial defense counsel for not objecting to Dr. Burns' testimony regarding Child Sexual Abuse Accommodation Syndrome. In an affidavit in response to the allegation, the trial defense counsel stated that he became aware of the doctor's prospective testimony regarding the syndrome during a pretrial interview of the doctor. The defense counsel decided that objecting to the testimony would do more harm than good. As he understood *Gipson*, he judged that he would probably not be successful in opposing the evidence. The defense counsel therefore determined to rely on other tactics to refute the doctor's testimony.

The defense counsel further stated in his affidavit that several days after trial but before action by the convening authority, he received a copy of the latest Criminal Law Reporter. In it, he found a synopsis of *People v. Leon, supra*, a California Court of Appeals decision discussing Child Sexual Abuse Accommodation Syndrome.[1] The California court applied the *Frye* test in holding that evidence of the syndrome was not admissible. The court reasoned that there were insufficient grounds to establish that the syndrome was generally

---

1. The synopsis of *Leon* appeared in the Criminal Law Reporter dated 15 November 1989, the day following the end of the appellant's trial. 6 Cr.L. 1140 (11–15–89).

accepted in the scientific community and found that the syndrome evidence had little utility as a truth-seeking device in the criminal context. After learning of this case, the trial defense counsel cited it to the convening authority in his response to the staff judge advocate's post-trial recommendation, and attached a copy of the synopsis from the Criminal Law Reporter.

We hold that the trial defense counsel more than adequately met the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also United States v. King,* 28 M.J. 855, 856 (A.C.M.R.) *(opinion on rehearing),* *pet. denied,* 29 M.J. 329 (C.M.A.1989). His decision not to object to the syndrome evidence was well-considered and adequately met professional standards. Further, he aggressively defended the appellant at all stages of the trial and remained an effective advocate following trial, commendably bringing a new court opinion favoring his client's cause to the attention of the convening authority.

The remaining assignments of error are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.